ABIGAIL A. PRENTISS *et als.*, *vs.* DANIEL W. GARLAND *et al.*

Penobscot. Decided May 5, 1877.

*Lien.*

A lien for stumpage due upon logs is not discharged by the fact that the person having the lien takes from the general owner of the logs the negotiable notes of a third party payable to himself (the lien-holder), he giving at the time he took them a receipt containing the provision that the notes should not be regarded as a payment of the stumpage, unless paid.

Although such notes were given by a party in payment of the purchase of a portion of the logs from the general owner, and that fact was known to the person having the lien, his taking such notes conditionally would not be a waiver of his lien upon another portion of the logs not included in the sale of those for which the notes were given.

The person thus taking such notes does not convert them to his own use, so as to make them an absolute instead of a conditional payment of stumpage, by agreeing with the makers of the notes to compromise them for a sum less than the amount due thereon, upon a condition which has not happened; even though the notes were by the holders indorsed and deposited with a third person to be surrendered to the makers when such conditional agreement should be consummated.

ON EXCEPTIONS AND MOTION.

ASSUMPSIT on account annexed for balance due on stumpage of logs, cut by Edward Perry, in 1872-3 on township A, range 5, $1520.11, 17-64 only claimed in this action, $403.77. Also a count for money had and received.

The plaintiffs put into the case a permit, dated August 21, 1872, from Henry E. Prentiss and others, each for his own share only, to Edward Perry, to cut and remove timber with certain conditions and restrictions. The stumpage was to be paid on the first day of June, next, in cash or satisfactory paper on three months

with interest, with a provision for extension. The grantor reserved and retained ownership and control of the lumber wherever and however situated until the sums due for stumpage should be fully paid, and any paper which might be given for it paid.

Under the permit, Perry operated, and February 7, 1873, assigned to the defendants, his suppliers, the permit and all the logs to be cut under it. The plaintiffs also put in a receipt signed Henry M. Prentiss, of the following tenor:

"Received the notes of James Walker & Co., dated October 10th, 1873. One for six hundred seventy-five dollars on three months; one for six hundred seventy-six dollars on four months; and one for six hundred seventy-five and 66-100 dollars on five months, in all for the sum of two thousand twenty-six and 60-100 dollars, as collateral for the above bill, and if paid at maturity to be in payment thereof; but the lien on the logs, and all the remedies thereto belonging, remain in force till the notes are paid."

Also a memorandum of an agreement, dated March 14, 1874, signed S. R. Prentiss, James Walker & Co., Henry M. Prentiss, describing the aforesaid notes, and concluding as follows:

"In all for $2026.66, claimed as collateral only for stumpage on logs marked H Diamond Cross, cut by Edward Perry, under a permit of said proprietors of North Yarmouth Academy Grant, and the north part of No. 1, Range 4, in the winter of 1872-3. Said permit was assigned to D. W. Garland & Co., and the logs sold by them to James Walker & Co. The above notes received of Walker & Co., by said H. M. and S. R. Prentiss as agents were taken as claimed by them as collateral merely, and in the receipt given a lien reserved until the said notes were paid. The said Walker & Co. failed to meet said notes when due, and they still remain unpaid. The said Walker & Co. now offer twenty-five per cent. on the notes to be discharged from all further liability on the same. The said proprietors of North Yarmouth Academy Grant and north part of No. 1, Range 4, claim the right to recover of said D. W. Garland & Co. the amount of the stumpage due on said logs. Now the said proprietors agree that if the said Walker & Co. will deposit with Bowler & Merrill their notes with an indorser, satisfactory to them, on six months, for twenty-

five per cent. of the amount due on said three notes, then in the event of the said proprietors recovering of D. W. Garland & Co. the full amount of the stumpage due on said logs, the said notes or the proceeds of them to be returned to said Walker & Co.; but if the said proprietors fail to recover of said D. W. Garland & Co., then the said note or the proceeds of it to be taken by said H. M. and S. R. Prentiss, agents, in full of said Walker & Co.'s personal liability to them on the said notes taken as collateral, as aforesaid, but not to release any security now held for the payment of said stumpage. But if said Walker & Co. fail to make a general settlement with their creditors at the rate of twenty-five per cent. according to an agreement to that effect now being generally signed by their creditors, then this contract is to be void, and of no effect."

The defendants requested the following instructions :

" 1. If Walker & Co., when they gave the plaintiffs the stumpage notes, believed the notes were received in payment of the stumpage, and were not informed and had no knowledge of any agreement between the plaintiffs and Perry that the notes were to be collateral to the stumpage, and if the defendants had no such information or knowledge, and the plaintiffs agreed with the defendants, at the interview at defendants' store, before the sale of the logs, to take Walker & Co.'s notes in payment of the stumpage, and knew of the defendants' ownership of the logs, and the defendants supposed and believed the notes were taken in payment of the stumpage, then as to Walker & Co., and the defendants, the notes must be regarded as taken in payment of the stumpage unless Perry had authority from the defendants to make the agreement with the plaintiffs that the notes should be collateral, or the defendants ratified what Perry did.

" 2. If Walker & Co., when they gave the stumpage notes, believed the notes were received in payment of the stumpage and were not informed and had no knowledge of any agreement between the plaintiffs and Perry that the notes were to be collateral to the stumpage, and the defendants had no such knowledge or information at any time, and the plaintiffs promised the defendants to receive the notes in payment of the stumpage, and at the time the

plaintiffs knew of the ownership of the logs by the defendants and of the sale of the logs in July to Walker & Co., then the plaintiffs could not maintain this action for the proceeds of the logs sold in July unless Perry had authority from the defendants to make agreement with the plaintiffs, that the notes should be received as collateral, or ratified what Perry did."

It was admitted on the trial that, under the contract signed by Walker & Co., they deposited with Bowler & Merrill their notes with a satisfactory indorser for the twenty-five per cent. named in the contract, and made the settlement with their creditors named in the contract, and the stumpage notes were also deposited according to the contract, and it was a consummated contract; and the defendants asked the following instructions:

· " 3. That if said contract was entered into without the consent of either the defendants or Perry, and the defendants at the time of the last sale of the logs to Walker & Co. were the owners of the logs subject to the plaintiffs' lien and claim, and the plaintiffs knew it, then, by the terms of the contract, the plaintiffs adopted the stumpage notes as their own, or it was a conversion by the stumpage owners of the said notes to their own use, and afforded a defense to this action, at least to the value of the plaintiffs' share of the notes."

But the presiding justice refused the instructions, except as is contained in the charge to the jury, which on this part of the case was summed up as follows:

" If Perry was the general owner of the logs, and the plaintiffs had the first lien upon the same for the payment of stumpage, and the defendants had the second lien for their supplies and advances, and the plaintiffs understood the respective relations and rights of the parties at the time, and in the interview with the defendants and Perry (if they had one) agreed with them that they would take Walker & Co.'s notes in payment for the stumpage due, and this agreement was entered into with the understanding and design of the plaintiffs that the defendants would either make a sale, or permit Perry to do so, to Walker & Co., in order to obtain Walker & Co.'s paper, and if the defendants were influenced by such arrangement to allow Perry to sell the logs in order to get

such paper, when they would not have done so br such arrangement; and if the Walker paper was thus obtained and passed to the plaintiffs without any knowledge or consent on the part of the defendants that it was to be received by them otherwise than in accordance with the arrangements before described; and further, if the defendants would be prejudiced and injured by the transaction—if they are now still to be held responsible to the plaintiffs for stumpage—in such case the plaintiffs cannot recover, although, in fact, the notes subsequently to this agreement, were taken by the plaintiffs from Perry only as collateral security for stumpage instead of payment for it.

" Good faith, if these propositions are made out, would require that the plaintiffs abide by their action; and the law, which is founded in good faith and fair dealing, would not permit them to do otherwise."

A succinct statement of these and other facts, and the points taken by counsel, appear in the opinion. The verdict was for the plaintiffs for $387; and the defendants alleged exceptions.

*W. H. McCrillis & J. Varney,* for the defendants.

*A. W. Paine,* for the plaintiffs.

PETERS, J. The plaintiffs, owners of an interest in a tract of land, permitted in writing to one Perry, the right to cut and remove lumber therefrom, upon the express condition that the title to all lumber taken should be and remain in the permitters until the stumpage should be paid. Perry assigned the permit to the defendants, the assignment having the effect of a transfer of logs afterwards cut, by an indorsement in form absolute and unconditional, but intended by the parties thereto as security for supplies for the intended operation. Perry entered and cut upon the land in the winter of 1872–3, and the logs came down the river during the driving season following.

In July, 1873, a portion of the logs came through the boom, where they were sorted out from the logs of other owners, and the defendants took them and sold them on their own account to Walker & Co., receiving payment therefor, in utter disregard of the rights of the plaintiffs. That act made the defendants liable

to the plaintiffs in trespass for the logs so sold. This action is brought to recover from the defendants the money received therefor. The plaintiffs must recover, unless the action is defeated by some one of the transactions that took place afterwards.

In October, 1873, the balance of the logs were through the boom. Perry sold them to Walker & Co., with the consent of the defendants, giving the plaintiffs notes signed by Walker & Co., payable to the order of the plaintiffs, for stumpage on all the logs cut during the winter's operation, and taking from the plaintiffs their written receipt that the notes should be regarded as a discharge of the stumpage lien on the logs whenever (and not until) the notes were paid.

The defendants contend that the legal effect of plaintiffs' taking the Walker & Co. notes was a payment of the stumpage and not a pledge or security for it, because the notes were made payable to the order of the plaintiffs, without the name of the defendants or of Perry thereon. The answer is, that the notes were only taken as a conditional payment, the jury finding the fact to be so. The notes were received to be a discharge of the lien on the logs, when paid. If the notes had been paid the stumpage would have been paid. Whenever the notes are paid the lien is gone. Should the stumpage be collected by this suit or in any other way, the notes would belong to Perry or the defendants, and can be returned to them as any other kind of property could be which had been held for collateral purposes. We see nothing in the transaction of an unusual character. Suppose Walker & Co. at Perry's request had deeded a house or given a bill of sale of a ship to the plaintiffs, instead of giving the notes, upon an agreement of the plaintiffs to Perry, that the house or ship should be held as security for the claim of stumpage ; there could be no pretense that, because the title of the property was in the plaintiffs, they were obliged to keep it for the claim. They could deed it back without covenants, and so can they without recourse indorse the notes to Perry or his assignees if necessary. The counsel for the defendants put much stress upon the circumstance that the notes were not received by the plaintiffs directly from Perry, and the drift of the argument upon this point is, that their taking the notes was a transaction

with Walker & Co., and not with Perry or the defendants. We think it requires a distortion of the facts to obtain such a construction. It is true that the notes were not literally received from the hands of Perry, but they were taken from Walker & Co., in the presence of Perry and on Perry's account. There was no dealing between the plaintiffs and Walker & Co. The case does not disclose that a writing or a word passed between them. Perry sold the logs to Walker & Co. He so swears. His bill of sale, dated October 11, 1873, shows that he did. The defendants directed Perry to sell to Walker. Perry says, "he (defendant Cassidy) told me I might close the trade with Walker." Cassidy himself testified: "I said then to Perry to go and close his logs with Walker." Again, Cassidy says, "I told him (Prentiss) he could have our paper or Mr. Walker would buy Perry's logs, and Perry would give him Mr. Walker's paper." And Perry further says, "I told him (Prentiss) I had an offer for my logs from Mr. Walker and asked him if he would take Mr. Walker's paper for the stumpage." When Prentiss took the notes, Perry signed the bill of sale to Walker & Co., and received from Prentiss the conditional receipt, and also took away the notes of Walker & Co. given for the proceeds of sale exceeding the amount due for stumpage. Although Perry does not own that he got a receipt, the defendants' counsel admitted as a part of the case at the trial that a receipt was given. The notes were not given by Walker & Co. in purchase or payment of stumpage, as between themselves and the plaintiffs. They bought nothing of the plaintiffs nor undertook to. The notes were given as part payment of the logs purchased of Perry. In form they were given to the plaintiffs, but in substance and fact were payments to Perry. In the bill of sale, Perry receipts for these notes (to the plaintiffs) as payments toward the logs by him sold.

Then the defendants claim that the lien on the logs was lost, upon another aspect of the evidence. They contend that, as all the logs of the operation were sold to Walker & Co., by different sales, the plaintiffs approved and ratified such sales by accepting, for the stumpage, notes which were the proceeds of one portion of the sales, and that such approval and ratification are inconsistent

with the continuance of a lien upon any of the logs. It may or may not be, that a land owner will discharge his lien upon logs by permitting a sale thereof and taking for his stumpage some of the notes given for the logs sold, although he only gives a conditional receipt therefor, such as was given in this case. But that is not the case here. The plaintiffs have received none of the fruits of the sale in July, for which this suit is instituted. It must be borne in mind that the sale by the defendants in July, and the sale in October by Perry, with the consent of the defendants, are two entirely distinct and independent transactions. There is no more connection between the different sales than there would have been if the July sale had been made, not to Walker & Co., but to John Doe & Co., or any body else. The notes taken in October do not in any way represent the July sale or have anything to do with it. The plaintiffs have in no way assented to that sale. The most that can be urged in that regard, is, that they have agreed that they will assent thereto when the notes given them for stumpage shall be paid and not before.

Walker & Co. failed before the notes matured and the notes are still unpaid. They desired to compromise their liability thereon for twenty-five cents on the dollar. The plaintiffs were willing to so settle the notes with them, provided the notes were absolutely the property of the plaintiffs, as was contended by Perry and the defendants; otherwise, not. Accordingly the plaintiffs gave to Walker & Co. an agreement to compound the notes with them on that basis, provided they could not recover of the defendants the stumpage for the payment of which the notes had been conditionally taken. The defendants claim that this was on the part of the plaintiffs a conversion or absorption of the notes equivalent to collecting them. We do not accede to this view. What has been said on a previous point applies here. An agreement to settle upon condition is not itself a settlement. A conditional agreement to compromise is not *per se* a compromise. The defendants claim that the point urged by them is strengthened by the fact that the notes were indorsed by the plaintiffs and placed conditionally in the hands of Bowler & Merrill. But the indorsement was not made to pass any present title, but only that the title might

at some after time be passed, if there was occasion for it. Bowler & Merrill were the agents of the plaintiffs as well as of Walker & Co., by becoming the depositary of the papers for the parties.

Finally, the defendants say that, as between Walker & Co. and the plaintiffs, the conditional agreement to settle the notes became an absolute and perfected one on account of the delay in commencing this action against the defendants. This objection can avail nothing. No time is prescribed within which the controversy was to be commenced. No perceivable injury has been caused to anybody by the delay.

We do not feel willing to set the verdict aside as being manifestly against the facts of the case. The rule of law given upon the main point of fact submitted to the jury was acceptable to the defendants. The verdict finds that there were no facts upon which an estoppel as claimed could be founded.

*Exceptions and motion overruled.*

APPLETON, C. J., WALTON, DICKERSON, BARROWS, and VIRGIN, JJ., concurred.