THE MONTEREY, COOPER'S PLAINS, PAINTED POST AND CORN-ING PLANK ROAD COMPANY *v.* PHITE CHAMBERLAIN, ex'r, &c., of CURTIS J. CHAMBERLAIN, dec'd.

To forcibly and fraudulently pass any gate on any turnpike or plank road in this State is an offense by statute involving a forfeiture of a fixed pecuniary sum to the corporation whose franchise has been thus invaded.

The forfeiture named in the statute is intended as a punishment to the wrong-doer, and not as a compensation for damages to the corporation, and it was given to the corporation whose franchise had been violated, in order to make its enforcement more certain.

The intent of the statute (1 R. S., 588, § 54, and Laws 1849, ch. 250, § 5, amended 1850, ch. 71, § 2) is to protect turnpike and plank road corporations in the enjoyment of their franchises.

Such corporation does not forfeit its right to recover such penalty when it has leased a part of its road to be kept in repair, in consideration of the tolls which its lessee is authorized to collect and enjoy; but it may maintain an action for such penalty where the offense was committed at the gate in the possession of its lessee collecting the tolls for his own benefit.

The corporation whose gate is forcibly and fraudulently passed, or whose franchise is invaded, is the corporation injured in the contemplation of the statute.

APPEAL from judgment of the Supreme Court.

The action was by the plaintiffs, a plank road corporation, to recover the penalty given by statute for forcibly passing one of their gates without having paid the legal toll. The trial was had before Mr. Justice PARKER without a jury, at the Schuyler circuit, in December, 1860. On the trial these facts appeared and were substantially found by the judge:

The plaintiffs were duly incorporated under and by virtue of the general law of the State, in 1852, and, as such corporation, duly acquired the right to construct, and constructed its plank road, from the village of Monterey, in the county of Schuyler, to Corning, in the county of Steuben, a distance of some fifteen miles, and acquired the right to erect gates on such road and demand and receive tolls thereat; and the plaintiffs did construct and erect gates on such road, one of which was known as gate No. 4, situate in the town of Orange, near the village of Monterey.

That for at least five years prior to July, 1859, the com-

pany was in possession of the road and took tolls on it, and at the latter date had not abandoned any part of it, as they were authorized to do, upon obtaining the consent of two-thirds the stockholders holding two-thirds of the stock.

That at a meeting of the board of directors, held on the 28th April, 1859, the following resolutions were adopted:

*Resolved,* That inasmuch as Joel Voak, a stockholder in the company, desires to relay the road above the sixth mile stake, and agrees to indemnify the company against all costs or expenses or loss that may accrue thereupon, and inasmuch as two-thirds of the stockholders do not consent to its abandonment, therefore,

*Resolved,* That we accept of his proposition to lease it at one dollar per annum, and allow him to use the toll houses Nos. 3 and 4, according to the terms above specified, in lease this day signed, sealed and delivered.

The lease made by the plaintiffs with Voak, was as follows:

"Articles of agreement made this 28th April, 1859, between the directors of the Monterey, Cooper's Plains, Painted Post and Corning Plank Road Company of the first part, and Joel Voak, a stockholder of the company, of the second.

"*First.* The officers and the company for and in consideration of the sum of one dollar per year, hereby agree to rent or lease to said Joel Voak all that portion of the road lying above the six mile stake, with all the rights of the company and use of the toll houses Nos. 3 and 4.

"*Second.* Said Joel Voak hereby agrees to proceed forthwith to put the road in order, according to the requirements of the statute, and furthermore agrees to indemnify the company against any loss that may accrue, and preserve them from harm against costs and expenses of inspectors, &c., and others, for all that portion of the road hereby leased to him. The gatekeepers' wages are to be paid by him, and all expenses that may be made in consequence of his management of that portion of said road."

The judge further found that the portion of the plank road thus leased to Voak, laid between a point near Cooper's

Plains, in the county of Steuben, and the termination thereof in the town of Orange, being about nine miles thereof, upon which gates Nos. 3 and 4 were located; that pursuant to said agreement, the plaintiffs immediately after the same was made, surrendered and relinquished to said Voak the exclusive possession and control of the portion of the plank road so leased, and the collection and receipt of tolls thereon, and said Voak has ever since that time, until the time of the commencement of this action, had the exclusive control thereof, and employed gatekeepers and toll-gatherers at such gate, and caused tolls thereat to be collected and received for his own benefit exclusively; that the said plaintiffs have not had or assumed to have any interest in tolls collected at said gate since the execution and delivery of said agreement, and have not in that time employed any gatekeeper or toll-gatherer to receive or collect at said gates Nos. 3 and 4, or, either of them; that on the 27th July, 1859, the defendant on two occasions forcibly passed through said gate No. 4 without paying toll; that the plaintiffs sustained no injury by such passage of the defendant, or his omission to pay toll; and that the plaintiffs at the time of such passage by the defendant had no interest in tolls which the defendant omitted to pay at such gate No. 4.

The judge's conclusions of law were, that the defendant, by such passage, did not become liable to pay to the plaintiffs the penalty, to recover which this action was brought, and that the plaintiffs are not entitled to recover in this action; but that the defendant is entitled to judgment for his costs, and may have judgment accordingly.

The plaintiff's counsel excepted to that portion of the decision of the justice holding and deciding that, inasmuch as the road was so leased to Voak, the plaintiffs cannot recover; and also to that portion of the decision holding and deciding that the defendant is entitled to judgment for costs.

Judgment being entered for the defendant, on appeal to the General Term such judgment was affirmed; and the plaintiffs appeal to this court.

*J. J. Van Allen,* for the plaintiffs.

*G. B. Bradley,* for the defendant.

WRIGHT, J. The due organization of the plank road company, the construction and ownership of the road from Monterey to Corning, the non-abandonment or surrender of any portion thereof, or of the corporate franchises, and the forcible passage, by the defendant's testator, of one of its established gates, without having paid the legal toll, were conceded facts. To forcibly pass any gate on any turnpike or plank road is an offense, by statute, involving the forfeiture of a fixed pecuniary sum to the corporation injured, in addition to the damages resulting from the wrongful act. The obvious intention and purpose of the enactment is to protect turnpike and plank road corporations in the enjoyment of their franchises; and forcibly or fraudulently passing one of their gates, in violation of their corporate privilege, is, in law, as much a wrong done to them as willfully breaking, defacing or injuring their milestones, or breaking or throwing down their gates, or digging up or spoiling any part of their roads, or anything thereunto belonging. (1 R. S., 588, § 54; Laws of 1849, ch. 250, § 5, as amended by Laws of 1850, ch. 71, § 2.) Yet, it was held in the court below, that for the wrongful act of the defendant's testator in passing, by force, a gate of the plaintiffs, an existing plank road corporation, there could be no recovery. Such judgment, in my opinion, cannot be sustained. If it could be under the facts disclosed, a like construction of the statute would deny to the corporation the right of enforcing any of the penalties for the *quasi* criminal acts of others imposed for its protection. The defendant or other wrongdoers, with quite as much impunity, might deface its milestones, break down its gates, or tear up or spoil its road, as to pass one of its gates forcibly, for no one of these acts is any more an offense, by statute, than another. All are grouped together as statutory offenses, and the same penalty for the commission of either wrong accrues to the company.

The case was made to turn upon a narrow, and, I think,

a manifestly erroneous interpretation of the statute. The plaintiffs' road was some fifteen miles long. They had taken no steps (as the law gave them authority to do) to abandon or. surrender up any part of it. (Laws of 1854, ch. 87, § 1.) All these privileges and franchises, and their obligations to the public and to individuals in respect thereto, remained intact. In April, 1859, the company, whilst retaining under its direct management some six miles of the road, entered into an agreement with one Joel Voak, a stockholder, in respect to the remaining part of it. This agreement is set out in the case. It is called a lease, and it resembles one in some respects, though there is no specified term of letting. By it the company, for a nominal sum expressed, covenanted to rent to Voak "all that portion of the road lying above the sixth mile stake, with all the rights of the company, and use of toll houses Nos. 3 and 4;" and Voak covenanted "to proceed forthwith to put the road in order, according to the requirements of the· statute; to indemnify the company against any loss that might accrue; to preserve it from harm against costs and expenses of inspectors, &c., and others, and to pay the gatekeepers' wages, and all expenses that might be made in consequence of his management of the portion of road rented to him." Undoubtedly this agreement contemplated that Voak should have the entire control, management and use of the corporate property specified in it, and that the company, so long as such agreement continued, should relinquish to him, and for his benefit, and as a compensation for keeping the road in repair and saving it harmless from liability, the collection and receipt of tolls at gates Nos. 3 and 4. There is nothing, however, in the instrument binding the company to such a line of conduct for any definite period, or expressly pledging its interest or right in the tolls to be collected at those gates. But if there had been, in my judgment it would not have materially affected the real question involved in the appeal.

Just three months after the execution of the agreement, the defendants' testator, on two occasions, forcibly passed gate No 4 without paying the legal toll. Voak then had the

exclusive control and management of that part of the plank road mentioned in the writing, and on which such gate was located. He employed gatekeepers and toll-gatherers at both gates on the nine miles of road controlled by him, and collected and received the tolls for his own benefit exclusively, whilst the plaintiffs neither had, or assumed to have, at the time, any interest in tolls collected at said gates, or employed any gatekeepers to receive or collect at either of them. In short, the agreement between the company and Voak was being in good faith fulfilled, the latter having put the road in order as the statute required, and, as an indemnity, the company was allowing him to use its toll houses and collect and receive from persons passing over the road such tolls as it was legally entitled to demand. Under these circumstances, finding as facts what were mixed questions of law and fact, that the plaintiffs sustained no injury by the defendant forcibly passing the gate without paying toll, and that they had no interest in tolls which the defendant omitted to pay at such gate No. 4, the legal conclusion adduced was, that the defendant, by such forcible passage, did not become liable to pay to the plaintiffs the penalty imposed by law for his illegal and wrongful act. In other words, because by an arrangement between the company and Voak, the latter had been invested with the control and management of a part of its road, and was, with its consent, collecting and receiving the tolls for his own use, which it had the right by law to demand, and in which tolls, for the time being, it had no distinct interest, it was not entitled to maintain an action to recover the statute penalty; that having no actual present interest in the tolls collected at gate No. 4, the same inured by agreement to the benefit of Voak. The corporation was not *injured* by the defendant's omission to pay toll at that gate, and hence could not enforce the forfeiture, the right being given only to " the corporation injured" by the act of the offending party.

Such a construction of the statute is wholly subversive of its object, intent and meaning, if not its strict letter. The provision, which was incorporated into the Revised Statutes under the head "of turnpike corporations," and, in 1850,

was extended to plank roads, is as follows : § 54. Every person who shall, 1. Willfully break, cut down, deface or injure any milestone or post, on any turnpike (or plank) road ; or, 2. Willfully break or throw down any gate on such road ; or, 3. Dig up or spoil any part of such road, or anything thereunto belonging ; or, 4. Forcibly or fraudulently pass any gate thereon without having paid the legal toll ; for each offense shall forfeit to the corporation injured the sum of twenty-five dollars, in addition to the damages resulting from his wrongful act." (1 R. S., 588.) There is no mistaking the scope and purpose of the provision. Certain acts are declared to be offenses, and a penalty imposed on the offender. That penalty is made to accrue to the corporation to whom it is assumed an injury would result from the commission of either of the offenses. The words " the corporation injured " are evidently used in that sense and no other. The forfeiture was intended as a punishment to the wrongdoer, and in order to make its enforcement more certain, it is given to the corporation whose franchises have been violated. That the penalty was not intended as a compensation for the damages sustained by the corporation is apparent, as it is given in addition to the damages resulting from the wrongful act. How, then, could the fact that the tolls were being received at one of the plaintiffs' gates, by agreement by and for the use of Voak, affect their right to maintain an action to recover the penalty inflicted on the party offending by statute, who forcibly passed such gate. Did the leasing of the road to Voak operate as a license to the defendant and other wrongdoers to injure or destroy the property, or force the gates of the corporation ? Manifestly not. Whether the corporation or its lessee were collecting and receiving tolls at the gate when the offense was committed, can make no difference. Had the defendant instead of passing the gate by force or fraud, broken it down or defaced the milestones, or torn up the plank on that part of the road under the control of Voak, it cannot be pretended that an action for the statute penalty would not have accrued to the corporation ; but clearly it would not if the right is made to depend upon

the question of its having actual possession and control of the corporate property, when the wrong is perpetrated. No such element is required to make the statute offense complete. No one of the acts is more illegal or wrongful than another, and if the party offending is not bound to pay the forfeiture incurred to the corporation in case its gates are passed by force, he would not be if its gates were torn down, or its toll houses demolished, or its road spoiled.

In the present case, the company constructed and owned the road from Monterey to Corning. Its contract with the public, through the legislature, was to construct and keep it in repair in consideration that it should be guaranteed the right and privilege of asking and receiving certain tolls at the several gates from persons traveling on it, and be fully protected by law in the enjoyment of its franchises. Of course, without such protection its charter was entirely useless to it. The company, instead of keeping a part of the road in repair itself by its agents, agreed with Voak to do it, and the latter was to receive as a compensation therefor the tolls demandable by the company at the gates thereon. If this agreement with Voak was to be regarded as a lease of a part of the road to him, I apprehend the company had the legal right to enter into such a contract. It did not, as it could not, by reason of such lease, absolve itself from any obligation it owed to the public. Had an injury occurred to the defendant or any other person traveling upon the road by reason of the same being out of repair, the company would have been compelled to respond in damages to the injured party, and was subject to precisely the same liabilities to the public as if it had not entered into the lease. Its privileges and obligations were the same, as respected third persons and the public at large, after as before the letting to Voak. The defendant, or no other person, could use its road without the payment of toll. If its gates were forcibly passed without such payment, in contemplation of law it was the party injured. It is the corporation whose property is destroyed or franchise invaded, that is damaged by the acts prohibited by the statute. Had

the defendant thrown down the gate, instead of forcing it open, no one would pretend that the plaintiffs could not have recovered the statute penalty, and also the damages resulting from the wrongful act. So, also, having passed it by force, the plaintiffs are entitled to recover both the penalty and the damages. Voak, the lessee, could not maintain an action either for the penalty or for the damages, which were the unpaid tolls, but the corporation might. The forfeiture, in terms, is made to accrue to it, and it could undoubtedly recover by action the tolls to which it was legally entitled, notwithstanding the arrangement with Voak. The latter right of action would not depend upon a demand of the tolls at the gate on behalf of the plaintiffs.

But this was not the view of the court below. There it was held that the plaintiffs could not recover the penalty, because, having leased to Voak a portion of their road, and having no interest in the tolls or proceeds thereof, they were not injured by the wrongful acts of the defendant; that the only injury sustained by anybody, by the acts complained of, was occasioned by the omission to pay toll, and consisted of the loss of such tolls; that that was no injury to the plaintiffs, but was the loss of Voak, who alone was entitled to the tolls. The statute was construed as giving a right of action, for the penalty, to a turnpike or plank road company, only where such company suffers actual injury by the commission of the prohibited act, and as the only injury in the present case, by forcibly passing the gate, was the loss of toll to which Voak was entitled, and in which the plaintiffs had no interest, it was adjudged that they sustained no injury, and consequently had no right of action. Such a construction I cannot help thinking erroneous. The defendant enters upon the plaintiffs' road, passes their gates by force, and without paying the toll they were entitled by law to receive, and because, forsooth, by agreement, as between them and Voak, the tolls were to inure to the benefit of the latter, they are not within the pale of the statute designed for their protection. If this were so, no turnpike or plank road company could lease its road, without virtually forfeiting its franchises, as it would

lose all protection given it by law for their enforcement. No action could be maintained by the lessee or any other person, excepting the corporation to whom it is expressly given to enforce the statute penalties against wrongdoers. But it is not so. So long as the road is in existence, and the corporation is entitled to exercise its franchises, it is, in judgment of law, the injured party when its gates are forcibly or fraudulently passed to evade the payment of toll. It matters not what arrangement may exist between the corporation and a third person as to the disposition of, or interest in, the tolls demandable for the use of its road. Its right of action against the wrongdoer depends upon no such consideration.

The judgment of the Supreme Court should be reversed, and a new trial ordered. It was not questioned at the circuit, that on two occasions the defendants' testator forcibly passed one of the plaintiffs' gates without having paid the legal toll. By these acts he subjected himself to the penalties imposed by the statute. If the forfeitures were to the plaintiffs (as undoubtedly they were), they were entitled to judgment; and it was error to have given judgment against them.

Judgment reversed.