57 139

57 445

57 475

27 32
f62 547

27 32
65 443

## DIMMEY ADM'R *v*. WHEELING & E. G. RAILROAD CO.

Submitted September 14, 1885.—Decided November 21, 1885.

1. Where a married woman is killed by the negligence of a corporation, her administrator may under sec. 6, chap. 103 of the Code maintain an action for causing such death. (p. 34.)

2. If a declaration shows on its face, that the plaintiff's negligence contributed directly to and in part caused the injury complained of, it will be held bad on demurrer. (p. 46.)

3. To entitle a party to a continuance on the ground of the absence of a witness it must be shown, that the party has used due diligence to procure the attendance of the witness ; that he is material ; that the same facts can not be proved by any other witness in attendance ; and that the party making the application can not safely go to trial in the absence of such witness. (p. 48.)

4. Where the question is involved whether the plaintiff's intestate by jumping from a car drawn by horses, which were running away, was not guilty of contributory negligence and it appeared that there was an embankment near the place of the accident, over which the car might have been thrown, it was proper to ask a witness: "How steep is that embankment?" (p 49.)

5. Where death is caused to a passenger by the horses attached to a horse-car "running away," it was proper to prove facts tending to show, that the driver was incompetent. (p. 50.)

6. Where the husband as administrator of his deceased wife brought an action to recover damages of a street railroad company for causing her death, and he was on the trial examined as a witness on his own behalf, it was improper on cross-examination to ask him : "Are you not engaged to be married again?" (p. 50.)

7. If a party upon a trial before a jury objects to the giving of instructions, and after his objections are overruled, and the instructions are given, he does not except to the giving of the instructions, he will in the Appellate Court be deemed to have waived his objections. (p. 51.)

8. To escape the responsibility of contributory negligence the plaintiff is not required to exercise more care than is usual under similar circumstances among careful persons of the class to which he belongs. (p. 53.)

9. It is not a surprise of the character, which would be ground for a new trial, that a witness swears to a conversation had with the defendant.  (p. 54.)

10. A case in which the court properly refused to set aside a verdict for $5,000.00 in an action against a corporation for killing a person.  (p. 57.)

*Caldwell & Caldwell* and *Russell & Stifel* for plaintiff in error·

*W. P. Hubbard* and *L. S. Jordan* for defendant in error.

JOHNSON, PRESIDENT:

This is an action on the case brought in August, 1882, in the circuit court of Ohio county.   The plaintiff is the administrator of his deceased wife, Mary T. Dimmey.   The action was brought under the statute which authorizes an action against any person or corporation for the killing of a person. The declaration has three counts, in each of which it is alleged, that through the negligence of the defendant, which was at the time a street railroad company with its cars drawn by horses, the plaintiff's intestate was thrown from one of the cars of defendant and killed.   The defendant by counsel demurred to the declaration and each count thereof, which demurrer was overruled, and the defendant pleaded not guilty.   On October 9, 1884, the defendant by counsel moved to continue the case on the ground of the absence of a material witness; and in support of said motion filed the affidavit of E. J. Ritter, the secretary of the defendant, and the plaintiff filed the counter affidavit of A. C. Bewley.   The court overruled the motion to continue; and the case was tried by a jury on the issue.   On October 11, 1884, on motion of defendant the court directed the jury in addition to their general verdict to find in writing upon the following particular questions of fact:

"First.—Was not the accident to Mrs. Dimmey directly and immediately caused by her jumping from the car?

"Second.—If Mrs. Dimmey had remained in the car, would she have escaped injury?

"Third.—Did she not leave the car under circumstances, under which a person of ordinary and reasonable prudence would have remained in the car?

"Fourth.—Did not Mrs. Dimmey jump from the car?

"Sixth.—Did not Mrs. Dimmey through fright or excitement jump from the car under circumstances, under which a reasonable, prudent and careful person of the same class would have remained in the car?

"Seventh.—If the driver was off the car at the time of the accident to Mrs. Dimmey, did he voluntarily jump from the car, or was he thrown or did he fall from it?

"Eighth.—If the driver jumped or was thrown or fell from the car prior to the accident to Mrs. Dimmey, did he· endeavor to get on the car again before the accident?"

To the asking of these questions the plaintiff objected.

The jury rendered the following verdict:

"To No. 1, no evidence. To No. 2, yes. To No. 3, no. To No. 4, no evidence. To No. 6, no. To No. 7, he jumped. To No. 8, no. We the jury find for the plaintiff and assess the damages at $5,000.00."

A motion was made by defendant to set aside the verdict and grant it a new trial, which motion was overruled, and judgment on January 12, 1885, was entered on the verdict with interest from the date of the judgment. The court certified all the evidence in.the case, including the affidavits of Joseph Kleeh, E. J. Ritter and George Hess as a foundation for the motion made to set aside the verdict on account of misconduct of a juror, with the counter-affidavits of Henry Neuhardt and William Purcell; also the exceptions to the admission and rejection of evidence, and to the giving of the instructions for plaintiff, and refusing the ninth, tenth and eleventh proffered for the defendant, also to the refusing to exclude the plaintiff's evidence, and to refusing to set aside the verdict and grant a new trial.

To the judgment the defendant obtained a writ of error and *supersedeas*.

The first error assigned is, that the court overruled the demurrer to the declaration. It is insisted that the husband as administrator of his deceased wife, who brings this action, can not maintain the same; and to sustain the proposition the following authorities are cited; *Laughlin* v. *Eaton*, 54 Me. 156; Schoulder's Dom. Rel. 170; Cooley on Torts, 117; *Southworth* v. *Packard*, 7 Mass. 95; *Ballard* v. *Russell*, 33 Me. 196; *Dandridge* v. *Minge*, 4 Rand. 403; *Caperton* v. *Greg-*

*ory,* 11 Gratt. 505 ; *Harrison* v. *Gibson,* 23 Gratt. 312; *City* v. *Trowbridge,* 5 W. Va. 353; *Holton* v. *Daily,* 106 Ill. 131 ; *Lynch* v. *Davis,* 12 How. Pr. 323.

In *Laughlin* v. *Eaton,* 54 Me. it was held, that the well established doctrine of the common law, that a married woman can not sue alone for malicious prosecution, has not been changed by the Maine statute.    Burrows, judge, said : " The well known doctrine of the common law is, that, where a wrong is committed against the person of the wife during coverture, as by beating her, slandering her reputation or by malicious prosecution, she can not sue alone.    For injuries to the wife occasioning to the husband a deprivation of the society of his wife or of her assistance in his domestic affairs, or by which he is put to expense, he may have his separate action, as where a violent battery has caused a long continued illness of the wife, or expense in her case, or if she be maliciously indicted, and thereby separated from him, or he be put to expense in her defence.    But if the action is brought for *her* personal suffering and injury, the husband and wife must join, and care should be taken not to include in the declaration a statement of any cause of action, for which the husband alone would be entitled to recover."

In *Southworth* v. *Packard,* 7 Mass. it was held, that a release of damages by the husband for the personal abuse of his wife is a good bar to a joint action by husband and wife for the same cause.

In *Dandridge* v. *Minge,* 4 Rand. it was held, that, where the rights of the wife appear clearly in the record, it is the duty of the court *ex officio* to protect her against any injurious effects arising from the acts or admissions of her husband, whether the point was made in the pleadings or not ; that a bill by husband and wife is the husband's suit only, and the wife is joined for conformity, to be bound only so far as in justice she ought to be bound.

In *Harrison* v. *Gibson,* 23 Gratt. it was held, that a bill by husband and wife in right of the wife is the bill of the husband, and the wife is only joined for conformity.   The coverture of the wife is therefore no excuse for delay in bringing the suit.

In *City of Wheeling* v. *Trowbridge et ux.,* 5 W. Va. 353, it

was held, that, where an action is brought by the husband and wife for a wrong to the wife, there can be no recovery for what is special damage to the husband; that the wife may join with her husband, where she is the meritorious cause of the action, and where the right of action would survive to her, if the husband died before the amount of damage was recovered; otherwise, where the husband alone is entitled to damages, and in the case of his death they should go to his personal representatives. In that case one count in the declaration alleged damages to the husband; in another count alleged damages in a case, where the wife was the meritorious cause of the action. It was held that a demurrer to the declaration should be sustained because the different causes of action were united in the same declaration.

In *Holton* v. *Daly*, 106 Ill. 131, Michael Daly brought an action against Charles C. Holton for injuries caused by the burst of an emery wheel. The cause was tried, and a verdict rendered against the defendant for $5.000.00. At a subsequent term judgment was entered on the verdict. The judgment was reviewed by the appellate court, and the case remanded for a new trial. Subsequent to this Michael Daly died intestate and Mary Daly, administratrix of the estate, was substituted as plaintiff; and thereupon the defendant by counsel moved to dismiss the action as one not surviving to the administratrix, but the court overruled the motion and the defendant excepted. The case was again tried, and verdict and judgment were rendered for $4,000.00, and the case taken to the appellate court. The court held, that under the act of 1853 giving an action to a legal representative of a deceased person to recover damages, in case the death of the intestate was caused by the wrongful act, neglect or default of another, the cause of action is the wrongful act, default or neglect of the defendant, causing the death, and not merely the death itself; that in such a case no damage can be allowed for the bodily pain and suffering the deceased underwent, and his inability after receiving the injury to attend to his affairs generally, and for medical attendance and nursing; that the damages recoverable are purely such as arise from pecuniary loss to the widow and next of kin; that injuries to the person not resulting in death in case of the

death of the injured party from some other cause will come under the act of 1872 and survive the personal representative; that in an action brought by a party to recover damages for a personal injury caused by negligence on the part of the defendant, and for pain and suffering caused thereby and for loss of time and capacity to earn a livelihood and for nursing and medical attendance, where the injury complained of results in his subsequent death before judgment, does not survive to his personal representative, but it will survive if his death is from some other and different cause.

*Lynch* v. *Davis*, 12 How. Pr., was an action by a husband as administrator of his deceased wife for malpractice by the defendant, who was a physician and surgeon, by which the wife was killed. The court held the action could not be maintained. Harris, Justice, said:

"If the cause of action stated in the complaint is to be regarded as a breach of the obligation implied in the employment of defendant as a physician the right of action was vested in the plaintiff, as the *husband* of his wife and not as administrator. The contract to perform his professional duty in a skillful manner was made with the husband and not the wife. In an action founded on this breach of duty the husband might recover the damages he had sustained by reason of the loss of the society and aid of his wife. * * If the action had been founded upon the wrong committed by the defendant and the personal suffering that resulted to the wife, she could not have sued alone if living, but the husband must have been joined as plaintiff with her. (1 Chitt. Pl. 73.) It would, indeed, have been the action of the husband, though the wife being the *meritorious cause* must have been joined with him as plaintiff. Upon the death of the wife, the cause of action so far as it related to her, did not survive at common law. The Act of 1847 (Sess. Laws 1847, p. 575,) upon which the plaintiff relies, gives an action to the personal representative, of the persons injured and dying, when the person so injured, if living might have maintained an action, and recovered damages for the same injury. * * There is nothing in the language of the act referred to which would warrant such an action. The wife if living could not have maintained an action for the injury."

Counsel for the defendant in error insists, that the action can be maintained, and that the demurrer was properly overruled, and cites: *C. B. & Q. R. R. Co.* v. *Dunn*, 52 Ill. 260; 1 Min. Inst. 350; 1 Chitty Pl. 83; 1 Selw. N. P. 208; Saunders Pl. & Ev. 196; *City v. Trowbridge*, 5 W. Va. 353, *Norcross* v. *Stuart*, 50 Me. 87; *Saltmarsh* v. *Condia*, 51 N. H. 1; *Pettingill* v. *Butterfield*, 45 N. H. 98; *Chapman, Adm'r* v. *Rothwell*, 96 Eng. C. L. 168; *R. R. Co.* v. *Sullivan*, 59 Ala. 272; *Morrison* v. *Basport*, 67 Me. 352; *Plankroad* v. *Chamberlain*, 32 N. Y. 659; *Dickens* v. *R. R. Co.*, 28 Barb. 41; *Green* v. *R. R. Co.*, 31 Barb. 260; *Bream* v. *Brown*, 5 Cold. 168; *Steel* v. *Kurtz*, 28 Ohio St. 181; *R. R. Co.* v. *Whitton*, 13 Wall. 270; *Tilley* v. *R. R. Co.*, 24 N. Y. 474; *Same* v. *Same*, 29 N. Y. 252.

Mr. Chitty in his Treat. on Pl. p. 83, says: " Where an injury is committed to the *person* of the wife *during coverture*, by battery, slander, &c., the wife can not sue alone in any case, and the husband and wife *must* join, if the action be brought for the personal suffering or injury to the wife, and in such case the declaration ought to conclude to their damage, and not to that of the husband alone; for the damages will survive to the wife, if the husband die before they are recovered, care must be taken not to include in the declaration by the husband and wife any statement of the cause of action for which the husband alone ought to sue; therefore after stating the injury to the wife, the declaration ought not to proceed to state any loss of assistance or expenses sustained in curing her."

In *Norcross* v. *Stuart*, 50 Me. 87, it was held, that an action in the name of husband and wife for injuries sustained by her survivor, the husband may withdraw, that the administrator may come in and prosecute; that in such case the husband can not be considered a party after the death of the wife, but if made her administrator, he may prosecute in that capacity. Kent, Judge, in delivering the opinion of the court said:

"This action was instituted by the husband and wife against the defendant as a common carrier of passengers for injuries sustained by the wife alone. The only ground for damage set forth in the declaration is the alleged injuries to the person

of the wife.    The wife has died since the entry of the action. The husband has been appointed administrator of her estate. A motion was filed setting forth the facts of the death of the wife, and declaring as the ground of the motion to dismiss the action, that it can not be prosecuted by the husband as survivor, and that the cause of action does not survive, and that there is no provision of law authorizing the appearance of an administrator to prosecute the suit.    This motion was sustained, *pro forma.*   This action survives, if there are proper parties to prosecute it.    *Hooper* v. *German,* 45 Maine 209.

*  *  Assuming the position of the defendant's counsel to be correct, the husband is but an enabling party, a side supporter, and not an actor.    He is only required to be joined by reason of the marriage relation, which considers husband and wife one, and which does not allow the wife to sue alone.    He may be likened to a guardian in whose name an action is brought for his ward.    *  *   In this case we think that the husband, being a mere nominal party in effect, having no right to be in the writ except as aid and supporter of his wife and as one with her, dies as a party when his wife dies, and may therefore withdraw as the husband, to allow the administrator to come in."

The judge cited two cases, which fully sustains the decision: *Pattee* v. *Harrington,* 11 Pick. 221, in which it was held, that, if pending an action brought by husband and wife to recover a debt due to the wife when sole the wife dies, and the husband takes out administration on her estate, he may come in and prosecute the suit as administrator; and *Crozier* v. *Bryant,* 4 Bibb 184, where it was held, that an action brought by a husband and wife to recover slaves, claimed in right of the wife against a person having adverse possession previous to the marriage, is on the death of the wife properly revived in the name of her administrator, the property never having been reduced into posession by the husband during the coverture.

To the same effect is *Saltmarsh* v. *Candia,* 51 N. H. 71, where it was held, that a suit brought by husband and wife for a personal injury to the wife can not be prosecuted by the husband after the wife's death, but may be prosecuted by the wife's administrator.

In *C. B. & Q. R. R. Co.* v. *Dunn*, 52 Ill. 260, it was held, that the right of action accruing by reason of personal injuries received by a married woman by negligence of a railroad company is property, and coming to her from a source other than her husband, in good faith, it is her seperate property and comes under the operation of the act of 1861; that such right of action being the seperate property of the wife, she may sue alone to recover damages for the injury received; that the right of action in such case being in the wife the husband cannot without her consent adjust it or release it; but the action having been brought in the joint names of the husband and wife, and the husband having as the agent of his wife for a certain consideration compromised the suit and agreed to dismiss it and release the cause of action, it was held, that such release operated as a bar to subsequent action for the same injury brought in the name of the wife alone.     Breese, C. J., delivering the opinion of the court, said :

" The act of 1861 was evidently designed to relieve married women from some of the disabilities the common law had for centuries imposed upon them.     By force of that law the maxim obtained, that husband and wife are one person, and although property be the wife's the husband is the keeper of it, being the head of the wife.     Co. Lit. 112.     These maxims were law in this State up to the comparative modern date of February 21, 1861, at which time it was enacted by the legislature, that,

" ' All property, both real or personal, belonging to any married woman as her sole, and seperate property, or which any woman hereafter married owns at the time of her marriage, or which any married woman, during coverture, acquires in good faith, from any person, other than her husband, by descent, devise or otherwise, together with all the rents, issues, increase and profits thereof, shall notwithstanding her marriage, be and remain during coverture, her sole and seperate property, under her sole control, and be held, owned, possessed and enjoyed by her the same as though she were sole and unmarried; and shall not be subject to the disposal, control or interference of her husband, and shall be exempt from execution or attachment for the debts of her husband.'

" The rule in construing remedial statutes, though it may be in derogation of the common law is, that everything is to be done in advancement of the remedy, that can be done consistently, with any fair construction that can be put upon it. Impressed with the force of this course of interpretation, this court, soon after the enactment of this statute, not in terms giving the wife, the power to sue alone in matters affecting her separate property, held, that, to render the act operative and effectual for the purposes intended by it, it was indispensible, she should have this right, and accordingly sustained an action of replevin brought by a married woman, to restore to her the possession of personal property, being her own separate property, which had been seized by a constable, on an execution against her husband. *Emerson* v. *Clayton*, 32 Ill. 493. It was there said, the right to her property being vested in the wife, by statute, it must, if the act is to be enforced, so remain until she consents to dispose of it, for this right includes full dominion over it; when these rights, are the only rights affected, on the well established principles of law, she must bring suit for the invasion of them: * * The only object of the statute was to keep her separate property out of the control of her husband. If his were not so, the act would be futile and of no effect. The husband for purposes of his own might refuse to join in an action with his wife. He might connive with others to dispossess her of her property. The right of sole control over the separate property of the wife by her, includes the power to do whatever is necessary to the effectual assertion and maintenance of that right." After an able argument to show that a right of action is property, he concludes that branch of his opinion by saying : " We are satisfied this right of action is property included in the words ' all property ; ' it was the separate property of the wife acquired during coverture, and from a source other than her husband, and she alone controls it."

In *Dickens, Administrator of his wife, Sally Dickens*, v. *N. Y. Cent. Railroad Co.*, 28 Barb. 41, it was held contrary to *Lynch* v. *Davis*, 12 How. Pr., that an action can be maintained under the act of 1847 : " Requiring compensation for causing death by wrongful act, neglect or default," by an in-

dividual as administrator of his deceased wife, whose death was caused by the negligence of the defendant, although the deceased left no father or mother or defendants surviving her. (*Lynch* v. *Davis* was decided at the Rennselaer special term June, 1855, and *Dickens* v. *Railroad Co. sapra*, in July, 1858.)

In 1859, the case of *Green* v. *Hudson River Railroad Co.*, 31 Barb. 260, it was again held that an action can be maintained under the act of 1847, by an individual as admidistrator of his deceased wife, whose death was caused by the negligence of the defendant, on a complaint alleging that the deceased left a mother, who was her next of kin, surviving her. In this case, Bacon, judge, said : " As an original question, I confess my impressions would be strongly against the maintenance of this suit."

In *Lilly* v. *Hudson River Railroad Co.*, 29 N. Y. 252, the suit was brought by William Lilly, as administrator of his deceased wife for damages, and there was a recovery of verdict and judgment, which was affirmed by the court of appeals. The same case was before the court and reversed in .24 N. Y. 474. Such a suit was sustained by the supreme court of Ohio. In *Steel* v. *Kurtz*, 28 Ohio St. 191, Ashburn, judge, says : " No question is made on the record as to the right of the plaintiff to maintain the action, and we will take it for granted by the parties that the case is one where if Isabella Lotz had survived the injury she could have maintained the action. In such case the statute says : ' then and in every such case the action shall be maintained in the names of the personal representatives, for the exclusive benefit of the widow and next of kin of such deceased person.' "

The case of *Railway Co.* v. *Whitten, Adm'r*, 13 Wall. 270, was of the same character, and arose under the statute of Illinois.

In *Bream, Adm'r* v. *Brown*, 5 Cold. 168, it was held, that where the plaintiff's intestate being sick sent a written prescription prepared by a physician, for certain medicines to the defendants, who were druggists and prescriptionists; and that Evans, a clerk of the other defendants, prepared the prescription so negligently and carelessly, that he mixed other medicines that were poisonous, which were taken by

the intestate, and from the effects of which she died, that the personal representative of the deceased, could maintain an action against the defendants for the wrong and injuries to the intestate.   The action was brought by Philip Bream, as administrator of his deceased wife, for the use of himself and Catharine and Bridget Bream, minor children of Bridget Bream, deceased.   The provisions of the Tennessee code under which the action was brought, is : " In all and every case where any person shall come to his death by injuries received from another, whether the same were inflicted feloniously or not; for which injuries, in case death had not resulted, an action of damages would lie at law, the personal representative thus killed, shall have the right to institute a suit for damages in either of the circuit courts in this State," &c.   This was the act of 1850, and at the time of the decision, was embodied in the Code as follows : " The right of action which a person who dies af injuries received from another, or where death is caused by the negligent acts, or ommissions of another, would have had against the wrong-doer, in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to his personal representatives, for the benefit of his widow, or next of kin, free from the claims of creditors."  The court in its opinion by Shackleford, judge, said :

" The intention of the legislature was to protect the life of the citizen by giving compensation in damages against the party for the commission of wrongful or negligent acts. * * The act of 1850 was passed altering the common law, and giving the right to sue to the personal representative, in the case of death.   *   * It is insisted that the word *person* does not include the wife, as this section by its terms, means the deceased must have left a widow and next of kin ; that sec. 2291, is explained by sec. 2292 ; that in the term next of kin in the last section referred to the language is : ' The action may be brought by the personal representative of the deceased for the benefit of the widow and children, and if he decline it the widow and children may bring it.   *   * In other words that the statute provides for the death of a man and not a woman.'   *   * To this construction we can not assent.   *   *   * The language is very broad, the word person be-

ing used, includes all classes, and every one is embraced, who if death had not ensued, could have maintained an action. * * Could the wife in this case have sued, if she had survived the injury, and permanent health resulted ? By the common law the wife could not sue alone. She had to join with her husband ; if the husband died, the right survived to her. By provision of sec. 2291, if the person injured had a right to sue, the action shall not abate. By reason of the coverture the wife can not sue alone, she must join with her husband ; but the right of action springs from and out of her; the husband is the means by which that right is enforced. As in the case of infants, who must sue by their guardian or next friend, and so in all the relations of life where persons are under disabilities. The injury inflicted was to the wife. Can it be doubted that if she had lived she could have maintained the action ? The proposition is too plain for argument, the courts are alike open to the wife as well as to the husband. Where their rights are not antagonistic, they must join, but where they are opposed, the law gives the remedy."

In *Railroad Co.* v. *Sullivan,* 59 Ala. 272 it was held : " The compensation given by the act does not go to the husband, wife or child of the deceased, as such, but becomes assets of the estate not subject to the payment of debts, and must be distributed as the personality of an intestate is now distributed. The damages given must be recovered by the personal representatives of the decedent. That a release given by the husband to a corporation by whose wrongful act or omission the wife was killed, is no bar, or defence, to an action brought by her representative to recover damages."

So in England, under the Stat. 9 & 10 Vict. ch. 93, it was held, that one as administrator of his deceased wife, could maintain an action against the defendant by whose negligence her death was caused.

This action is brought under sec.s 5 and 6, of ch. 103 of the Code, which read as follows :

" Fifth.—Whenever the death of a person shall be caused, by wrongful act, neglect, or default, and the act, neglect, or default, is such, as would, (if death had not ensued,) have entitled the party injured, to maintain an action to recover

damages in respect thereof; then and in every such case the person who, or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the party injured, and although the death shall have been caused under such circumstances, as amount in law to murder in the first or second degree, or manslaughter."

"Sixth.—Every such action shall be brought by, and in the name of the personal representative of such deceased person; and the amount recovered in every such action, shall be distributed to the parties, and in the proportions provided by law in the relation to the distribution of personal estates, left by persons dying intestate. In every such action the jury may give such damages as they shall deem fair and just, not exceeding $5,000.00, and the amount so recovered shall not be subject to any debts or liabilities of the deceased; provided that every such action shall be commenced within two years after the death of such deceased person."

There is no doubt, that these sections only authorize an action in the name of the administrator of the person, who has been killed through the wrongful act or neglect of another, when, if death had not ensued, the *party injured* might have maintained an action for such injury. The *party injured* is clearly the party killed, and if such party, had not death ensued, could not have maintained an action, for the injury, neither can the administrator of such party maintain an action for the death of such party caused by the wrongful act or neglect of the party killing him, or her. At common law, if death were instantaneous, no action could be maintained for such wrongful act or negligence. But if death did not at once ensue, the party injured had his action, for the damages suffered. At common law, it the party injured were a married woman, the husband could sue alone for the loss of the society and aid of his wife and for expenses about her cure; and the wife being the sufferer was the meritorious cause of another action, which the husband and wife together might maintain; and if pending the action the husband died, the action did not abate but survived to the wife, (1 Chit. Pl. 83); and if pending the action the wife died, the action did not abate, but the husband stepped aside, and it

prosecuted to the end by the administrator of the wife. (*Norcross* v. *Stuart*, 50 Me. 87; *Pattee* v. *Harrington*, 11 Pick. 22; *Crozier* v. *Bryant*, 4 Bibb 174.) But for the fact that the married woman at common law in a case where she was the meritorious cause of the action, was under disability, and the fruits of the action would go to her husband, she might have sued alone, I am not prepared to say, that under our statute she could sue alone for an injury to herself, nor do I think it necessary to decide in this case, whether she could or not; but she could certainly have joined with her husband and brought an action for the cause set out in the declaration, if death had not ensued from the injury. But a single case, so far as I know, holds that under such circumstances where death ensued, the administrator of the wife could not maintain the action. That case is *Lynch* v. *Davis*, 12 How. Pr. 323. It has not been followed in New York, and to my mind its reasoning is very unsatisfactory.

We have cited a number of pertinent authorities, which hold, that the action may be maintained. It would be strange indeed, if the legislature intended, that for every death by the wrongful act, neglect or default of a person or corporation an action might be maintained, except for the killing of married women. The object of the statute was in part at least for the protection of human life, and it would be a reproach to the legislature, to suppose, that no one would be held to answer in damages. for the killing of married women, but should be held to answer for the killing of every other person. We are asked to so construe this statute, because, it is insisted, had death not ensued, the married woman could not *alone* sue for the injury. The statute does not say, that only the party injured could sue. The language is, where the wrongful act, neglect or default "is such, as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof."

The declaration is good, and the demurrer was properly overruled.

It is insisted however, that the second count of the declaration is bad, because it shows on its face contributory negligence in Mrs. Dimmey. If it does, it is bad. It is not necessary

in a declaration to negative the fact that the plaintiff was guilty of contributory negligence. (*Snyder* v. *Railroad Co.*, 11 W. Va. 14 ; *Washington* v. *Railway Co.*, 17 W. Va. 190.) But if the declaration shows on its face that the plaintiff was guilty of negligence, which was the direct cause of the injury, it will be held bad on demurrer. (79 Va. ——— ; *Sheriff* v. *Huntington*, 16 W. Va. 307.) The second count alleges, that by the carelessness of the driver, the horses ran off, and the driver failed to control or make any effort to control the horses, but jumped from and deserted the car " and while the said horses were running off with the said car, the said Mary T. Dimmey being then and there in danger of great bodily harm and injury, and of losing her life, and in order to save herself from the then impending danger jumped from or attempted to jump from the car so negligently, carelessly and recklessly managed and driven as aforesaid, and was violently thrown to the ground and thereby then and there killed."

It has been held that a passenger who is injured in attempting to leave the car on seeing two trains approaching each other, at such a speed as to make a serious collision inevitable, is not to be deemed guilty of negligence.

In *Frink* v. *Potter*, 17 Ill. 406, it was held that a passenger in or upon a stage-coach may leap from it to extricate himself from peril, occasioned by the fault of the carrier, if he does so without rashness. In delivering the opinion of the court Skinner, judge, said : " The evidence shows that the plaintiff was riding on the outside of the coach with the driver; that the axle broke in the centre, letting the coach down and upsetting it ; that the plaintiff at the time, or before the coach upset, jumped or slid from his seat to the ground, and that the passengers inside the coach were not injured. It is wholly immaterial whether the plaintiff was injured by the upsetting of the coach, or whether the axle having broke, and the plaintiff thereby having been put in actual peril, to avoid injury, in the exercise of ordinary discretion jumped to the ground, and in so jumping received the injury. Passengers have a right, the best they may, to extricate themselves from peril, the fault of the carrier; and if in obeying the dictates of their nature, and without such rashness, as the circum-

stances would reasonably excuse, they meet an unlooked-for injury, the carrier is still liable, for the injury is the result of his wrong. The breaking of the axle, in this case, was the direct and proximate cause of the injury, and a part of the accident out of which it arose."

In *Ingalls* v. *Bliss*, 9 Metc. 1, it was held that if a passenger in a coach by reason of a peril arising from an accident, for which the proprietors thereof are liable, is in so dangerous a situation as to render his leaping from the coach an act of reasonable precaution, and he leaps therefrom and thereby breaks a limb, the proprietors are answerable to him in damages, though he might safely have retained his seat.

There is nothing in the second count of the declaration to show that Mrs. Dimmey was guilty of negligence. The horses were running off, the car was liable to leave the track and be capsized, and it might be by keeping her seat her life would be saved, or it might be that under the circumstances, she might save her life by jumping from the car. From what is alleged, the peril was caused by the negligence of the defendant.

It is assigned as error that the court refused to continue the case. It is well settled, that to entitle a party to a continuance on the ground of the absence of a witness, it must be shown, that the party has used due diligence to procure the attendance of the witness; that he is material; that the same fact can not be proved by any other witness in attendance; and that the party making the application can not safely go to trial in the absence of such witness. ( *Wilson* v. *Wheeling*, 19 W. Va, 323.) Here the affidavit shows everything necessary to be shown, except the use of due diligence to procure the attendance of the witness. The affidavit states, that the witness, Robert Stewart, was the driver of the car, when the accident occurred; that he had been voluntarily in attendance once, when the case was continued; that he had come voluntarily from his home in Ohio, and, when the case was continued, *promised* that he would come again as a witness upon being notified, and affiant believed he would comply with his promise; that about a week before the affidavit was made, affiant wrote and mailed a letter addressed to said Robert Stewart at Woodsfield, Ohio, where,

he was informed and believed, said Stewart resided, notifying him when the case was set for trial, and requesting him to attend in accordance with his promise, and that he did not come. Upon ascertaining his absence on the morning the case was set for trial, (the day the motion was made,) affiant "made inquiries concerning said Stewart, in the course of which affiant learned for the first time that the said Stewart was supposed to be now residing at Glencoe, Ohio, instead of Woodsfield." He made enquiries and found there was no telegraphic connection with Glencoe. He then telegraped to Woodsfield :

" ROBERT STEWART, *Woodsfield, Ohio :*

" Come at once to trial of Dimmey case.

" E. G. RUTTER, *Secretary.*"

" Answer."

With said telegram to Stewart he caused to be sent to the telegraph operator at Woodsfield the following :

" OPERATOR AT WOODSFIELD :

" Ascertain whether Stewart is there and report immediately."

A few minutes before two o'clock he enquired at the telegraph office, and no answer had been received from either Stewart or the operator.

By the counter-affidavit of Al. Bewley it appeared, that Stewart never had lived at Woodsfield, Ohio; that he has always lived at Glencoe, Ohio, except a short time while in the employ of the defendant; that he was living there at the " time of the last trial," and was still living there. Perhaps he meant " at the time the case was last set for trial."

The affidavits show no sort of diligence in trying to procure the attendance of the witness. Defendant relied on his mere promise to attend, without even knowing where he lived, so that he could be notified. The court did not err in refusing to continue the case.

The witness Bewley had said, that at or near the place, where the accident occurred, there was an embankment on the right-hand side of the road coming into the city, and the grade was steep. The question was put by the plaintiff : " How steep is that embankment ?" to which defendant objected; objection overruled, and defendant excepted.

7

Witness answered, " Well, it is right steep; I can't say exactly how steep it was; it is very steep." This was clearly proper. One question before the jury was, whether Mrs. Dimmey did not jump from the car, and whether in so doing she was not guilty of contributory negligence; and the fact that there was a steep embankment, over which she was liable at any moment to be thrown, was competent for the jury to consider in determining whether under the circumstances Mrs. Dimmey was guilty of negligence in jumping from the car, if indeed she did so jump.

John Clark, a driver on the defendants' road, was asked by plaintiff: "From your knowledge of Mr. Stewart, what kind of a driver was he?" Defendant objected and the court refused the question, and said : "I think that must be ascertained from the facts." But the witness in his testimony said: "I didn't consider him a driver. I didn't think he would ever make a driver. I don't think he handled them (the horses) very good for a driver; he didn't handle the horses with the double lines; didn't handle the brake." The court on motion of defendant excluded all these answers, except: "He didn't handle the horses with the double lines ; he didn't handle the brakes;" and the defendant excepted. There was no error in this. It was proper for the witness to state how he handled the lines, or what he did not do in handling the lines or the brakes, and from his conduct the jury were to say, whether the driver was guilty of negligence, and consequently whether the defendant was negligent.

While the plaintiff, William Dimmey, was on the stand and had testified, that the deceased was his wife, and that she had two children, Lois Dimmey, three years old, and Rosanna, fourteen months old ; and that on the morning of the accident she got on the nine o'clock church car, and the next he saw of her was about ten o'clock, when she was brought back dead. On cross-examination the defendant proposed to ask the witness the question : "Are you now engaged to be married again ?" to which the plaintiff objected, and the objection was sustained, and defendant excepted. The court did not err, in refusing to permit such a question. It had nothing whatever to do with the question of damages. In B. &

*O. R. R. Co.* v. *Wightman's Adm'r*, 29 Gratt. 431, it was held. in such an action as this, that it was not competent for the defendant to show that the deceased held policies of insurance on his life for the benefit of his wife and children, and since his death the amounts called for by the policies had been paid over to his widow and children. .

After the plaintiff had rested, the defendant by counsel moved the court to exclude all the plaintiff's evidence; which the court refused to do, and the defendant excepted. It is presumed this was intended as another mode of testing the plaintiff's right to maintain the action. For if he had such right it clearly appears that there was ample evidence to go to the jury on the issue. The court did not err in refusing to exclude it. As the point is not insisted on in argument, we suppose it was abandoned.

At the instance of the plaintiff the court gave the jury five instructions. The record states: "To the giving of each of which instructions the defendant objected but the court overruled its objections and each of them and gave the said instructions to the jury." But the record does not state that the defendant excepted to the giving of the instructions. Can these instructions be considered by this Court. In *Wickes* v. *Baltimore and Ohio Railroad Co.*, 14 W. Va. 157, it is held that it must appear from the record, that an objectionable ruling of the court during the trial before the jury was saved before the jury retired. In *Perry* v. *Perry*, 26 Gratt. 320, a motion was made to exclude from the jury the testimony of a witness and was overruled, before the case was given to the jury; but it did not appear from the record, that the point was saved by the party, or any notification given, that it would be saved, until after the verdict was rendered. The court held that the rule of practice required that notice should be given at the time of the ruling of the court or at least before verdict. In *Core* v. *Marple*, 24 W. Va. 354, it was held that when an itstruction is given to the jury without objection at the time, and no exception or notice of exception is taken or given, before the verdict is returned by the jury, the giving of the instruction can not be a ground for setting aside the verdict and granting a new trial of the case. In *State* v. *Phares*, 24 W. Va. 657, it was

held that in a case tried by a jury, no matter how many exceptions are taken to the ruling of the court made during the trial unless a motion is made before the trial-court to set aside the verdict and that motion is overruled, all such errors saved will in the appellate court be deemed to have been waived. To the same effect is *State* v. *Thompson*, 26 W. Va. 149, and *Dank* v. *Roadheaver*, 26 W. Va. 274, where the authorities on the subject are reviewed.

If the party upon a trial before a jury objects to the giving of instructions, and after his objections are overruled and the instructions given, he does not except to the giving of the instructions, he will in the appellate court be deemed to have waived his objections. It is not enough, that he objects but upon the overruling of his objection, if he would save the alleged error in the giving of the instruction, he must except and thereby give notice that he intends to have the rulings reviewed, so as to give the trial-court an opportunity to re-examine the instructions and correct any error in giving such instructions. I have however carefully examined the instructions and see no error therein to the prejudice of the defendant.

For the defendant's eight instructions were given against the objection of the plaintiff, who thereupon excepted. Of course the plaintiff can not here complain of the instructions as the judgment was in his favor, unless the judgment was here recovered and the case remanded for a new trial.

The defendant then asked the court to give the two following instructions:

"Ninth.—Although in ascertaining whether a person has been negligent or not, it is proper to consider the circumstances, in which he is placed, so that what might be negligence under some circumstances, might not be so under others, and so that it might be proper, for one to do in view of imminent danger, that which would at other times be considered rash, yet this rule only permits a person to do what persons of ordinary prudence would have done under like circumstances; therefore if Mrs. Dimmey, at the time of the accident did what ordinary prudent and careful persons would not have done under similar circumstances, and if such act on her part contributed immediately to the injury, then the plaintiff can not recover."

"Tenth.—If Mrs. Dimmey through fright or excitement, did at the time of the accident that which a reasonably prudent and careful person would not have done under the same circumstances, and such act on her part contributed immediately to the injury, the plaintiff can not recover and the jury must find for the defendant."

To the giving of which the plaintiff objected and the court refused to give them as tendered, but changed them by inserting the words "of the same class" after the words "ordinary prudence" in the ninth instruction, and the same words after the words "ordinarily prudent and careful persons" in the same instruction ; and the same words after the words "reasonably prudent and careful person" in the tenth instruction, and then gave the said instructions thus modified to the jury.    To the refusal of the court to give the instructions as asked, the defendant excepted.    This assignment of error is not argued by the counsel for defendant.    Was it error to so modfy the instructions ?    A person who is old or infirm would be guilty of culpable negligence in taking risks which might be very properly assumed by a young healthy and vigorous person.    But as in questions relating to contributory negligence it is the plaintiff's own person or property, concerning which negligence is imputed to him, if at all, and the defendant must be in fault in order to raise the question, the plaintiff is not required to exercise more care, than is usual under similar circumstances among careful persons of the class, to which he belongs, if that class is numerous enough to have a well recognized existence, and is one which reasonably informed men must be aware may be commonly exposed to injuries similar to that on which the action is founded.    (Shearm. & Red. Neg. sec. 30.)

In *Tucker* v. *Henniker*, 41 N. H. 317, it was held that a person is bound to exercise ordinary care, skill and prudence in the management of his train, such care, skill and prudence as mankind in general, and not such as persons of the same class and decision of mankind as himself are accustomed to exercise in the management of trains.

In *Mackay* v. *Railroad Co.*, 35 N. Y. 80, Peckham, judge, in delivering the opinion of the majority of the court, said : "The counsel for the defence intimated that if this action was

sustained others would be induced to drive recklessly on the track and endanger the lives of passengers on the cars. Human experience furnishes no ground for such an intimation. It is entirely idle. What a man will not do to save his life, no forfeiture of goods, or penalties that law can inflict, will make him do. He will adopt all the precautious he deems appropriate to protect his life. Human penalties can make him do no more. They can not change man's nature. Hence rules for his government should be adapted to the actual man that he is. You do not expect the same care and caution from the mass of ignorant laborers, that is exercised by educated, grave philosophers. The mass of men would never exert it, and the law that requires it would be absurd. He should be called upon for such care only as a man in his situation and condition in life would ordinarily exert under like circumstances. Does not a juror know what that is as well as a judge? The ignorant and unwary are entitled to the protection of the law, as well as the wise and the educated." A railroad man would be held to greater care than a farmer.

There was no error in modifying the instructions.

There are several other exceptions found in the bill, which are not assigned as error and are not insisted on in argument, and as we think there is nothing in them they will not be considered.

It is assigned as error, that the court refused to set aside the verdict, it being shown by affidavits, as claimed by defendant, that it was surprised on the trial by the testimony of the witness Clark. The affidavit of Rutter, the secretary of defendant, shows that he had been entrusted with the care of the defence of the action, and that he heard "John Clark testify that he had a conversation with Joseph Kleeh, the superintendent of defendant, a day or two before the accident to Mrs. Dimmey; that in that conversation he and Kleeh were talking about the driving of Robert Stewart, the driver, who was in charge of the car in question in this case; that he had told Kleeh that he did not think Stewart would ever make a driver, and that he (Clark) considered he wouldn't, and that Kleeh had claimed that said Stewart understood horses, and had worked horses a good deal and could drive.

"This testimony of Clark's was altogether a surprise to me. I had never had any reason to suppose that Clark, or any other witness would testify to any such facts, and so far as I am aware none of the officers of the said company, nor any other person in the defence. of the case knew or supposed that any such testimony would be offered in the case. If I had known or supposed that any such testimony would be offered I would have made every effort to procure the attendance or the deposition of the said Joseph Kleeh, who as I am informed and believe would have positively contradicted the said testimony of Clark." Kleeh in his affidavit swears no such conversation ever occurred between Clark and himself.

In *Whalford* v. *The Commissioners,* 4 Gratt. 553, it was held that on the trial of an indictment for obstructing a public road, it is no reason for a new trial on the ground of surprise ; that the defendant was mistaken as to the point where the obstructions was charged to be, and so was not prepared to defend it.

In *White* v. *Washington,* 5 Gratt. 645, it was held, that in an action at law on a promise founded on a gaming consideration, if the defendant is surprised at the trial, and there is a verdict and judgment against him, he may come into equity for relief, though he made no effort to obtain a new trial in the common law court. Baldwin, judge, in delivering the opinion of the court said in substance that the merits of the case were not developed at law, because the only witness before the jury, examined by the plaintiff and relied upon by the defendant, having told defendant, he would swear that the consideration of the promise was a gaming consideration, and the said witness from design, or lapse of memory failed to swear to any thing but the promise. The gaming consideration and the surprise being conceded, if no relief can be had in equity, it must be on the mere ground that it ought to have been sought in the court of law by a motion for a new trial, and this not having been done the verdict and judgment stands. * * A gaming consideration forms an exception to the general rule requiring a defendant at law to avail himself of a good legal defence to the action. Our statute not only renders the gaming transaction unlawful but

avoids all contracts, &c., for money won at play. It behooves courts of equity as well as courts of law to suppress the enforcement of such provisions and contracts. This case is cited, not because, I think it pertinent but because it was relied upon by plaintiff in error.

. In *State* v. *Miller*, 24 W. Va. 804, this Court said: "The defendant had notice of what the State proposed to prove and should have been prepared with his witnesses to defend himself. He was not to govern his action by what the State's witnesses might depose, and could not claim that he was surprised because one or more of them might swear different to their testimony on a former occasion. * * He does not claim that the testimony by which he could contradict the witness was after-discovered. There is nothing in the affidavits to justify the court in granting a new trial."

If new trials could be granted for such causes as are set forth in these affidavits, there would be no end of litigation. The surprise was not of the character, that would justify this Court in reversing the judgment and granting a new trial. Moreover, the evidence, to which objection is made, was on motion of the defendants excluded.

As to the motion to set aside the verdict on the ground of misconduct of the juror, Purcell, there is no improper conduct shown. What was attempted to be shown is contradicted by both Purcell and Newhardt in their affidavits.

But it is insisted, that the verdict should have been set aside as excessive. Sec. 6 of ch. 103 of the Code declares: "In every such action the jury may give such damages, as they shall deem fair and just, not exceeding $5,000.00." It is claimed there was nothing in the evidence to warrant such an extraordinary verdict; that the jury had gone to the extreme limit, and it is insisted that the jury must have been controlled by prejudice and sympathy.

In *Lilly* v. *Railroad Co.*, 29 N. Y. 286, Hogeboom in delivering the opinion of a majority of the court, said: " A liberal scope was designedly left for the action of the jury. They are to give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death. They are not tied down to any precise rule. Within the statute as to amount, and the

species of injuries sustained, the matter is to be submitted to their sound judgment and sense of justice. They must be satisfied that pecuniary injuries resulted. It so satisfied they are, at liberty to allow them from whatever source they actually proceeded which could produce them. If they are satisfied from the history of the family, or the intrinsic probabilities of the case, that they were sustained by the loss of bodily care, or intellectual culture, or moral training, which the mother had before supplied, they are at liberty to allow for it. The statute has set no bounds to the sources of these pecuniary injuries. If the rule is a dangerous one and liable to abuse, the legislature and not the courts must supply the correction."

Dr. William Cracraft testified that he had been the family physician in Mrs. Dimmey's family for ten or twelve years. She was about twenty-seven years old when she was killed, and was in good health. Her fitness to rear and manage her children was good. She was as healthy a woman as any in the neighborhood. The care she bestowed on her children was good, no finer or better mother in the neighborhood, or more estimable lady. The record shows she left two children motherless; a boy three years old and a little girl fourteen months old. How can we say that the jury have over-estimated the loss of the care, intellectual culture and moral training of a good mother? What was her pecuniary value to these young children? Can we say they have been more than compensated for the loss of that nurture and training which only a mother can give? I can not say that under the circumstances, the jury have abused the large discretion given in the statute, or that their verdict shows any evidence of passion or prejudice. As the New York court said, if it is a dangerous rule, and one liable to abuse, the legislature must correct it, as the courts have not the power.

There is no error in the judgment of the circuit court, and it is therefore affirmed.

AFFIRMED.