# CHARLESTON

NORMILE AND HUSBAND v. WHEELING TRACTION CO.    -

Submitted January 31, 1905.    Decided February 14, 1905.

1. HUSBAND AND WIFE—*Suits by Wife, When Husband Party.*

In an action by the wife for the recovery of damages for personal injuries sustained by her, she may, or may not, at her election, join her husband as co-plaintiff.    (p. 135.)

2. PERSONAL INJURIES—*Wife—Measure of Damages.*

When the wife sustains personal injuries, and brings an action to recover damages therefor, she may recover for being prevented from performing and transacting her necessary affairs and business by her to be performed and transacted, if such prevention is the result of the injuries for which she sues.    (p. 134.)

3. PERSONAL INJURIES—*Evidence.*

In an action for personal injuries, where, as a result of such injuries, a surgical operation is necessary to be performed, evidence which shows or tends to show that such operation was attended with great difficulty and dangers, and that comparatively few physicians perform such operation, is admissible.    (p. 138.)

4. PERSONAL INJURIES—*Evidence—Ordinary Care.*

A plaintiff, in an action for damages for an alleged negligence of another, is not required to exercise more care than is usual under similar circumstances among careful persons of the class to which said plaintiff belongs.    (p. 139.)

5. PERSONAL INJURIES—*Contributory Negligence—Instructions.*

When an action is brought to recover damages for personal injuries sustained by the plaintiff on account of the defendant's negligence, it is not error to omit to instruct the jury as to the law of contributory negligence in an instruction given for the plaintiff, when the court, in giving the defendant's instructions, instructs the jury fully and fairly on that point.    (p. 140.)

6. PERSONAL INJURIES—*Damages—Instructions.*

It is not error to instruct the jury that the loss of child bearing power is an element of damage to be considered by them, in an action for personal injuries sustained through the negligence of the defendant, when such loss is the reasonable and probable result of such negligent act.    (p. 141.)

7. STREET CAR COMPANIES—*Care of Passengers.*

Where a street car company stops its cars for the purpose of receiving passengers, it is charged with the highest degree of care to see that all passengers lawfully entering its cars get to a place of safety thereon before starting its cars.    (p. 142.)

8. Jury Trial—*Contributory Negligence.*

　　A case which was proper to be submitted to the jury on the question as to whether or not the plaintiff was guilty of contributory negligence.   (p. 145.)

9. Personal Injuries—*Damages not Excessive—Jury Trial.*

　　In an action to recover damages for personal injuries, the court will not interfere with the verdict of a jury, on the ground that the damages found are excessive, unless the finding is so manifestly unjust as to show partiality, prejudice or misapprehension on the part of the jury.   (p. 145.)

Error to Circuit Court, Ohio County.

Action by Annie Normile and husband against the Wheeling Traction Company.  Judgment for plaintiffs, and defendant brings error.

*Affirmed.*

H. M. Russell and Erskine & Allison, for plaintiff in error·

Caldwell & Caldwell, for defendants in error.

Sanders, Judge:

This is an action brought by Annie Normile and Thomas Normile, her husband, against Wheeling Traction Co., in the circuit court of Ohio county, for personal injuries sustained by the female plaintiff, which, it is alleged, were caused by the negligence of the defendant company.   There was a verdict and judgment against the company of $9,150.00, to which a writ of error and *supersedeas* was awarded.

The first error complained of is that the court improperly overruled the demurrer to the amended declaration.   Counsel for the defendant contend that the declaration is bad, because the female plaintiff and her husband are joined therein as co-plaintiffs, and that it unites two causes of action, in this: That in each of the three counts of the declaration it is alleged that Annie Normile was hurt in her person, and that she has suffered pain and had become sick, "and by means of which she was prevented from performing and transacting her necessary affairs and business by her to be performed and transacted."   There is an endeavor to assimilate the declaration in this case with the one which was before the Court

in the case of *City of Wheeling* v. *Trowbridge*, 5 W. Va.
353, but, upon a comparison of these declarations, it will be
found that there is a vast difference between them.   In the
*Trowbridge Case*, one count in the declaration alleged a case
in which the wife was the meritorious cause of action, and in
the other count "the husband claimed special damages for
the loss of the society, comfort, assistance, etc., of his wife,
and for money laid out and expended by him in and about
the endeavoring to heal and cure her."   Where the action is
brought by the husband and wife for a wrong to the wife,
there can be no recovery for what is special damage to the
husband.

The Court, in its opinion in the *Trowbridge Case*, says:
"The wife may join with the husband when she is the meri-
torious cause of action, and when the right of action would
survive to her if the husband died before the amount of
damages was received.   But where the husband alone is en-
titled to the damages, and in case of his death they would
go to the personal representative, then the husband should
sue alone."

The loss of the society, comfort and assistance of the wife,
and money expended by the husband in endeavoring to heal her,
could alone be sued for by the husband, but very different is the
declaration in the case before us.   There is no claim made by
the husband for damages, and the allegation therein contained,
"and by means of which she was prevented from performing
and transacting her necessary affairs and business by her to be
performed and transacted," is not an element of damage for
which the husband alone could sue, but if so at the time of
the decision of the *Trowbridge Case*, certainly not so now,
because, at common law, and when that case was decided,
and until the act of the Legislature of 1891, chapter 109,
section 14, the earnings of the wife, during coverture, were
the property of her husband, but, by the said act of 1891,
the common law rule was abrogated, so that now the earnings
of the wife, and any and all property purchased by her with
the proceeds of said earnings, is her sole and separate prop-
erty, so that her business affairs and transactions, and what-
ever might result from them, does not belong to her husband,
and if she is interfered with in her business transactions, and
for that reason unable to earn what she otherwise would

have earned, the damage is personal to her, and such damages can be recovered by her in an action alone, or jointly with her husband.

The other reason assigned why the demurrer should have been sustained, is, that it was improper to join the husband and wife as co-plaintiffs.    At common law the action to recover damages for personal injuries to the wife must be brought in the names of the husband and wife, jointly, the cause of action being in the wife and surviving to her in case of the death of the husband. but this common law rule has, in a large measure, been abrogated by the various Married Woman's Acts.    A married woman is allowed to sue in her own name to recover damages for personal injuries to herself, where the ground of the action is her injury and suffering; and, also, the same rule applies in actions concerning her separate property, but, in a few of the States, the common law rule, in this respect, has not been altered, and the wife is still required to join her husband as co-plaintiff.    And in most of the states where the common law rule has been abrogated by permitting the wife to sue alone for personal injuries, it is held to be inperative, depriving the husband of any interest in the suit and forbidding his joining therein, but, in many of the States, the statute is deemed permissive, and merely allows the wife either to sue alone or join her husband at her election. *Palmer* v. *Davis*, 28 N. Y. 242; *Draper* v. *Stouvenel*, 35 N. Y. 507; *Whidden* v. *Coleman*, 47 N. H. 297; *Cooper* v. *Alger*, 51 N. H. 172; *Corcoran* v. *Doll*, 32 Cal. 82; *Reinheimer* v. *Carter*, 31 Ohio St. 579; *Kennedy* v. *Williams*, 11 Minn. 314; *Gee* v. *Lewis*, 20 Ind. 149; *Kramer* v. *Conge*, 16 Ia. 434; *Novell* v. *Rice*, 2 Wis. 22; *Barr* v. *White*, 22 Md. 259.

But it is the well settled practice in this State, and has been since the question was first presented to our courts, that the wife may, or may not, at her election, join her husband with her in an action concerning her separate estate. *City of Wheeling* v. *Trowbridge, supra; Wyatt* v. *Simpson*, 8 W. Va. 394; *Dimmey* v. *R. R. Co.*, 27 W. Va. 32; *Fox* v. *Insurance Co.*, 31 W. Va. 374; *Robinson* v. *Woodford*, 37 W. Va. 377; *Matthews* v. *Greer*, 21 W. Va. 694; *McKenzie* v. *R. R. Co.*, 27 W. Va. 306.

But it is contended that the rulings in this State permit-

ting the joining of husband and wife were made prior to the revision of the Married Woman's Act, chapter 66, Code, Acts 1893, chapter 3.    This is true as to the cases above cited, but the case of *Clay et ux.* v. *City of St. Albans,* 43 W. Va. 539, was decided since said act of 1893, but, as counsel says no reference was made in that case to said act, and for the very reason, likely, that the Court did not regard it as making any change in the rule.   There is nothing in this statute that changes the rule that the wife may, or may not, at her election, join with her husband in an action for personal injuries sustained by her, and, even if it should be doubtful as to what construction ought to be given to it now, the court would give it that construction which makes it permissive rather than imperative, and·thereby leave unchanged the practice which is so well settled, especially when by doing so, no injury therefrom can result to the defendant.   The declaration being good, the court committed no error in overruling the demurrer.

In order to deal properly with the other assignments of error, it will be necessary to give a statement of the facts as they appear from the record.   The female plaintiff, Annie Normile, who lived at 57 Thirty-third street, in the city of Wheeling, on the 27th day of December, 1902, started from the home of her mother, at 2310 Market street, where she had been visiting that day, to return home.   She had with her a bundle containing a loaf of bread, which she carried in her left arm, and a basket containing a few bottles, canned goods, etc., which she carried on the other arm.   She stopped at the corner of Twenty-third and Main streets to take passage on one of the cars of the defendant company,  At that point she met Lloyd, Kyle and his wife, with a baby which Kyle was carrying in his arms, who were waiting at the same place for the car. Shortly after she reached that point the car came and stopped for the purpose of receiving passengers, the conductor not being on the platform, at the rear end of the car, where passengers are supposed to enter, but remained in the car, about the middle thereof.   Kyle helped his wife on the car and she opened the door and went in.  Kyle, with his baby in his arms, got upon the platform himself; Mrs. Normile attempted to follow him; and when she stepped with one foot

upon the step of the car, and after having raised the other from the ground in an attempt to step upon the car, the conductor rang the bell to give the signal for the car to start. At the sound of the bell, Annie Normile dropped her basket on the platform and caught the handle of the car with her right hand. When the car started it did so with a jerk, and threw her so that her right side struck the end of the car. Kyle caught hold of her, but, still having the baby in his arms, his hold gave way, and, after being dragged about thirty feet, with the speed of the car constantly increasing, Annie Normile fell to the ground. As Kyle caught hold of Mrs. Normile, he called twice to the conductor to stop the car, and after she fell he opened the door and told the conductor to pull the bell for the car to stop. When the car was stopped the conductor went back, met Mrs. Normile, and assisted her into the car. The accident occured on Saturday night, and shortly after Mrs. Normile boarded the car she began to feel sick and continued to grow worse until, on the following Monday morning, she went to Dr. Haskins, a physician, who prescribed for her, and the treatment of the physician not having relieved her suffering, and continuing to suffer, in about a week she went to see him the second time. He made some external examinations and made some applications of plasters, and she' not improving from this treatment, shortly afterwards returned, and, on the third visit, the physician decided that an internal examination was necessary, but, for some reason at that time Mrs. Normile was not willing to be examined, and the physician says that he thought it was because she was menstruating, but in a few days she returned and the examination was made which showed that an operation would be necessary, and Mrs. Normile afterwards went to the hospital of Dr. Haskins, where, on the 24th of February, there was performed upon her the operation called laparotomy. She remained in the hospital for a period of five weeks after the operation was performed, at the end of which time she returned home; this operation being a very severe and dangerous one, and one which comparatively few physicians will perform. At the time of the accident Mrs. Normile was twenty-three years old, and up to that time had always been a strong, healthy woman; had always helped to do the housework at home, and, at the

time of the accident, was doing her own work, as well as washing for herself and husband. After the accident and before the operation she was not able to do any work, and since the operation she has not been able to do any work of any consequence, and, as a result of the operation, she has lost the power of bearing offspring. Dr. Haskins, in his evidence, states that he could not state positively that the operation was made necessary as a result of the accident, but he stated that such injuries as she received would, in all probability, result in such an operation being necessary.

The next assignment of error is that the court erred in overruling the objection of the defendant to certain testimony of the witness, Dr. Haskins. Upon the subject of the operation of laparotomy, which was performed upon the female plaintiff, her counsel, in endeavoring to show the dangers incident to such an operation, and the gravity of it, and the skill required to perform it, asked the witness certain questions, which, together with the answers, are as follows: "Q. Is laparotomy a specific branch of surgery? A. Well, yes; yes, it is. Of course you do that and do general surgery too, but at the same time it is a special branch of surgery. A man might be able to amputate a leg very well, and do what we speak of as gross surgery such as amputations, and not be capable of performing laparotomy for lack of experience and attention to that particular branch of surgery. Q. State whether or not all physicians who have studied surgery perform that operation, or refuse to perform it. A. Oh, there are comparatively few men that perform these operations, comparatively few. Q. Why? A. Perhaps they don't have taste for it; perhaps they haven't the backbone to tackle it in the first place—I don't know." In the first place the record shows no objection to the questions, but, after all of the questions were propounded, and the answers given, the defendant's counsel entered an objection, but it does not appear what questions were objected to. While we can infer that the objection was intended to refer to the evidence complained of, yet, in order to get the benefit of the ruling of the court, it must affirmitively appear what evidence was objected to. But if there had been an objection to the evidence, it should not have been sustained, because the evidence shows that the operation which was performed upon the

female plaintiff was attended with great difficulty and dangers, and that comparatively few physicians perform such operation, which would thereby increase the expense of securing a physician to do the work, and this being an element of damages which the plaintiff would be entitled to recover, it alone makes the evidence admissible. Then, again, to show that it was such an operation that but very few physicians would perform, goes to show the difficulties which attend its performance, and the gravity of it, which would also make the evidence admissible.

At the request of the plaintiff, and over the objection of the defendant, the court gave to the jury two instructions, which constitute the next assignment of error.

Instruction No. 1. The court instructs the jury that to escape the responsibility of contributory negligence, a plaintiff in an action for damages for an alleged negligence of another, is not required to exercise more care than is usual under similar circumstances among careful persons of the class to which such plaintiff belongs.

There is no objection pointed out to this instruction, and it seems to have been taken from the case of *Dimmey* v. *Railway Co.*, 27 W. Va, 32, in which the Court gave to the jury an instruction in substantially the same language, and also the Court laid down the law in that case to be: "To escape the responsibility of contributory negligence, the plaintiff is not required to exercise more care than is usual under similar circumstances among careful persons of the class to which he belongs." We think this instruction correctly propounds the law applicable to this case. All persons are not chargeable with the same degree of care, and the jury, in passing upon the care that the plaintiff should exercise at the time of the accident, had the right to consider the class to which she belonged, and had a right to take into consideration all the circumstances surrounding the accident, as they would appear to a person of her class.

Instruction No. 2. The court instructs the jury that if under the evidence they find the defendant guilty as in the amended declaration alleged, then in estimating the damage of the plaintiffs they have the right to take into consideration the personal injuries inflicted upon the plaintiff Annie Normile, in consequence of the defendants wrongful acts, if

any such injuries are proved, and the pain and suffering both mental and physical, undergone by her in consequence of such injuries, if such pain and suffering have been proved; and if they further believe from the evidence that the said injuries are permanent, and that they include an inability to have any child or children, these facts may also be included in their estimate, if they further believe from the evidence that such permanent injury, including such inability, resulted from such wrongful acts."

The defendant urges two reasons why it was error to give this instruction. One is that it wholly eliminates the question of contributory negligence, and the other is that it instructed the jury that they might consider a feature of the injury which should not have been included in the jury's finding. Taking it that counsel for the defendant is right in saying that the question of contributory negligence is eliminated by giving this instruction, and that it should have presented that question to the jury, still, under the repeated decisions of this Court, it is not error when the jury was fully and fairly instructed upon the question of contributory negligence in other instructions. In the instructions given for the defendant the question of contributory negligence was clearly presented to the jury, and it was the duty of the jury, in deciding the case, to take the instructions as given, both for the plaintiff and defendant, and if the instructions taken, and read together, instruct the jury correctly as to the law of the case, there is no error.

Did the court, in this instruction, tell the jury that they might consider a feature of the injury which should not have been included in their finding? This contention is based upon the part of the instruction which tells the jury, "if they further believe from the evidence that the said injuries are permanent, and that they include an inability to have any child or children, these facts may also be included in their estimate, if they further believe from the evidence that such permanent injury, including such inability, resulted from such wrongful acts," and in support of this position the case of *Peters* v. *Johnson*, 50 W. Va. 641, is cited. and in which the rule was definitely stated that the damages which may be recovered are such, and only such, as are the reasonable and probable consequence of the defendant's act. The loss of

the power of child bearing is certainly an element of damage to be taken into consideration by the jury, as much so as an injury to any other part of the human body, and the question as to whether or not the injury is the reasonable and probable consequence of the negligent act, is a question of fact for the jury. It was for them to say whether or not the operation of laparotomy was made necessary by reason of the accident, and if so, was the loss of child bearing the reasonable and probable consequence of such negligent act. In the case of *Denver & Rio Grande R. R. Co.* v. *Harris*, 122 U. S. 597, it is held: "Thus, when one of the direct consequences of a wound was the loss of the power to have offspring, evidence of that fact was admissible, though the declaration did not directly designate that consequence." Complaint is made that the jury should have been told in the instruction that such damages could not be properly included in their estimate unless the evidence showed that the injury in question was the reasonable and probable consequence of the defendant's negligence. While this instruction does not, in express terms, so instruct the jury, yet the language used in the instruction is sufficient to guide the jury to a proper conclusion in this respect. They are told that they can consider this feature of the injury if it resulted from the wrongful act of the defendant—not that if it is a reasonable and probable consequence of the negligent act, but, as a matter of fact, if the loss of child bearing was the result of the defendant's wrongful act, the jury were told that they could consider this in estimating the damages. For the reasons given, we find no fault with this instruction.

The remaining question to be determined, is, whether or not the verdict of the jury is supported by the evidence. The negligent act complained of is that the defendant company did not exercise due and proper care in the management of its car at the time the plaintiff, Annie Normile, attempted to take passage thereon. It will be observed, from the facts, that at the time the plaintiff, Annie Normile, attempted to board the car, and after she had stepped upon one of the steps with her right foot, and while in the act of stepping up with her left foot, and after she had raised it off of the ground, that the conductor gave a signal for the car to start; that Mrs. Normile thereupon became excited, dropped her basket

upon the platform, and the sudden movement of the car threw her against the rear rail of the landing. At that time Kyle, who had preceded her, and who had stepped up on to the platform, endeavored to assist her, but, not being able to render her sufficient assistance, and the speed of the car constantly increasing, that his hold upon her loosened, and, after being dragged a considerable distance, she was thrown from the car into the street. It is the duty of a street railway company, when stopping its cars for the purpose of the reception of passengers, to use the highest degree of care to see that those who are intending to take passage thereon have safely boarded the cars, before giving the signal to start. If the conductor in this case had been at the proper place and exercised the proper care, this injury would have been avoided, but, on the other hand, instead of being at a place where his duty called him, and where he could see that all intending passengers were safely on board the car before giving the signal to start, he remained in the car, and before the female plaintiff had an opportunity to embark, the car was, under his order, started. It is no excuse for the conductor that he did not see that Mrs. Normile had not safely boarded the car, because the law imposes upon him the duty to see, and his failure to see does not excuse the company. The authorities are abundant to sustain the view that it is the duty of a street railroad company, when it stops its cars at a regular stopping place, to receive passengers, to see that they are safely aboard before starting the car. In the case of *Terminal Co.* v. *Morris' Admr.*, 44 S. E. R. 719, decided by the supreme court of appeals of Virginia, the court says: "It is the duty of a street car company, when its cars are standing at a stopping place for the reception of passengers, to use the highest degree of care to see that all passengers lawfully entering its cars get to a place of safety thereon before starting its cars." In Nellis on Street Surface Railroads, pages 458, etc., it is said: "It cannot be said however that it is inconsistent with ordinary care and caution for a person to board a street car while it is in motion. Whether one has or has not exercised reasonable care or caution in so doing is to be determined by the particular circumstances in each case, and is, therefore, a question of fact to be submitted to the jury. * * * If the passenger be in good physical condition and unincumbered

he may, without negligence, attempt to board a slowly moving car under all ordinary circumstances, and it will be even a question for the jury if in boarding he was negligent in not holding fast to the handrail provided for the purpose of aiding him to board.   *   *   *   But one with packages in both hands, as an umbrella in one hand and a handkerchief in the other, may attempt to board a slowly-moving electric car without being negligent as a matter of law."

In the case we have here, the car had been stopped, as it was the duty of the company to do, and, while the female plaintiff was somewhat encumbered with the basket on one arm and the package on the other, yet the car was standing still at the time she attempted to take passage, and if it had been permitted to remain so until she could have boarded the car, there would have been no injury sustained by her. She had the right to rely upon the company, that it would exercise due and proper care, and that it would not, while she was endeavoring to board the car, start, or give a signal to start the car. Much stronger is her case than are the cases referred to in the authority just cited. There it will be observed that the passengers were attempting to board a moving car, and even there the court held that it was a question of fact for the jury. "It is the duty of a conductor, before giving the signal to the employe controling the power to start, after the car has stopped to take on passengers, to look around and see that all passengers to take passage at that place are safely on board; and failure so to do is not excused by the fact that he does not see an intending passenger. The car must wait a reasonable time, and a passenger, diligent in attempting to get upon it while it is stopped to receive passengers, though lacking in dexterity, may recover for injuries sustained from the starting of the car while he is attempting to board it. If the car be started when the employes knew, or by the exercise of ordinary care could have known, that the passenger was attempting to board, the company may be made liable for injuries sustained by the intending passenger. He has the right to rely on the due care of the company, and is not bound to anticipate that the car will start suddenly and throw him upon the ground or against poles or other obstructions in close proximity to the track." Nellis Street Surface Railroads, pp. 161, etc. "And the fact that a person's move-

ments are somewhat encumbered by packages in hands may reasonably require more delay and care in starting the train in order to assure his safety, as in the case of aged or infirm persons." Clark's Accident Law, 27. And it is held in the case of *Cohen* v. *West Chicago Street Railway Co.*, 60 Fed. 698, that "a conductor of street cars, having the safety and even the lives of the passengers in his keeping, has not discharged his whole duty to the public when he has stopped his train and waited what may appear, according to his schedule, a reasonable time for passengers to embark.     *     *     * He is bound to know when he starts suddenly and with full force, that no person attempting to embark is, at that moment, with one foot on the platform and the other on the ground and with his hand upon the rail in the act of getting on board."

There seems to be no question, from the facts in this case, applying the rules of law to them, but what the defendant company failed to exercise that due and proper care that it should have exercised at the time that Annie Normile attempted to take passage on its car.

But the defendant urges that even if it was negligent, that the plaintiff, Annie Normile, was likewise negligent, and if the injury complained of was the result of the mutual fault of the defendant and Mrs. Normile, that then she is not entitled to recover, and that there was no material conflict of evidence in this case, and that the question as to whether she was guilty of contributory negligence was a question of law for the court, and that the court should not have submitted the question to the jury. . We cannot say that Mrs. Normile was guilty of contributory negligence. At the time she attempted to board the car it was standing still and she had the right to rely upon its so remaining until she had time to embark and reach a place of safety. She had a basket upon one arm and a bundle in the other, it is true, and was thereby unable to take hold of the railing, but this cannot be attributed to her as a negligent act. She had the right to attempt to enter the car without taking hold of the railing, and could have done so with all ease and without a particle of danger if the conductor had discharged his duty towards her by permitting the car to remain standing until he knew she was in a place of safety. But it is said she heard the

signal for the car to start and knew what it meant, and that she should then have stepped off. It may be that she could have stepped off without danger to herself, or it may be that she could not have done so; as to this we cannot say. from the evidence. She had to determine this question for herself, and she is not chargeable with doing wrong if she did not do the wisest and best thing under the circumstances. If she acted as a reasonable and prudent person would have acted, under like circumstances, she cannot be held guilty of negligence. After the car started suddenly and struck her on the right side, she was probably in a very poor frame of mind to decide, upon a moment's reflection, what course she ought to take. *Barker* v. *Ohio River R. R. Co.*, 52 W. Va. 428; *Tuttle* v. *Atlantic City Railroad Co.*, 54 L. R, A. 552. "A railroad company cannot be excused from gross negligence on its part, although the act of the injured contributed thereto, unless it be shown in evidence that such person was guilty of *legal negligence*; that is some act of negligence that an ordinarily prudent person would not have been guilty of under the same circumstances." *Meeks* v. *O. R. Ry. Co.*, 52 W. Va. 102. "When one by the negligence of another, is so placed that he must choose on the instant in the face of grave and impending peril, between two hazards, and he makes such choice as a person of ordinary prudence might make, his choice cannot constitute contributory negligence." *Twomley* v. *Central Park*, *&c.*, *R. Co.*, 59 N. Y, 158. Also, see *Dunning* v. *R. R. Co.*, 27 W. Va. 32; *Hoffman* v. *Dickenson*, 31 W. Va. 154. There are cases in which the question of contributory negligence is a question for the court, but, in order to make it such a case, the evidence to establish the contributory negligence must be so clear that the minds of reasonable men, free from bias and prejudice, could not come to but the one conclusion. In this case the evidence does not warrant such a position, but the case is one which was proper to be submitted to a jury, and the jury, having found upon this evidence in favor of the plaintiffs, its finding must be accepted as correct.

It is claimed that the damages are excessive. The question of the assessment of damages in cases of this kind is peculiarly within the province of the jury; and when the jury takes into consideration the injury that the plaintiff, Annie Nor-

mile, sustained. the continued pain and suffering which the evidence shows that she underwent, and the painful and dangerous operation that was necessary to be performed upon her, and the fact that it has left her in a delicate condition, and unable to bear children, are all facts upon which the jury had the right to base its finding; and we cannot say that the amount found by its verdict is excessive. And, for the foregoing reasons, the judgment of the circuit court is affirmed.

*Affirmed.*