390

ZELLA FOX,

*Plaintiff and Respondent,*

vs.

IDA E. FOX, Executrix of the Estate of Clarence P. Fox, Deceased,

*Defendant and Appellant,*

and

MRS. PAUL NORRIS,

*Defendant.*

(No. 2721; April 10th, 1956; 296 Pac. (2d) 252)

392

For the defendant and appellant the cause was submitted upon the brief and also oral argument of Alfred M. Pence of Laramie, Wyoming.

For the plaintiff and respondent, the cause was submitted upon the brief of Robert N. Chaffin and Joseph F. Maier, of Chaffin & Maier, Torrington, Wyoming; oral argument by Mr. Maier.

## OPINION

HARNSBERGER, Justice.

The plaintiff below, Zella Fox, sued the executrix of the estate of Clarence P. Fox and a Mrs. Paul Norris to recover from those defendants and each of them money damages for injuries she sustained on Novem-

ber 10, 1952, in an automobile accident alleged to have occurred as a result of defendants' negligence and while plaintiff was riding as a passenger for compensation in the automobile of the deceased. The case was tried to a jury which returned a verdict in favor of the defendant, Mrs. Paul Norris, but in favor of the plaintiff and against the defendant executrix in the sum of $10,000, for which sum with interest and costs of action the court gave plaintiff judgment against the executrix. The executrix has appealed to this court from that judgment, contending that there was reversible error in that:

(1) Plaintiff's husband was improperly permitted to testify over the appealing defendant's objection.

(2) The executrix was required to testify concerning confidential communications between the deceased and herself.

(3) There was a complete absence of evidence showing (a) plaintiff was a passenger for compensation, (b) the deceased was the operator of the automobile at the time of the accident.

(4) Erroneous instructions were given the jury, and proper instructions were offered and refused.

(5) Special findings returned by the jury entitled defendant to judgment notwithstanding the verdict.

It appears the deceased, who was the plaintiff's father-in-law, lived in Nebraska, about eighteen miles east of a Wyoming ranch owned by him and leased under a crop rental arrangement to his son, the plaintiff's husband. Under the terms of the lease the deceased was to receive one-fourth of the crops grown by the lessee. The son, by an instrument in writing, signed by him and upon the margin of which there appears the name of the deceased, contracted in 1952

with the Holly Sugar Corporation to grow 63 acres of sugar beets upon the leased lands, and to harvest and deliver the beets grown, in the factory sheds of the company or at a designated dump. The contract stipulated that the grower was to deliver the beets "as and when scheduled by the corporation until October 8", and after October 8, all unharvested beets were to be delivered by the grower as soon as possible, such delivery to be completed on or before December 1, the company not being obligated to receive any beets after that date. We might say here, that the exhibit evidencing this contract only purports to be a copy of the original, which makes it impossible for us to be certain whether the name of the deceased appearing in the margin, indicated the actual signature of the deceased or not, but inasmuch as the instrument is appellant's exhibit, and is represented by her as a true copy of the original, we assume it represents the signature of the deceased.

Early in the morning of November 10, 1952, plaintiff's husband directed her to call his mother and see if the deceased could come and get the plaintiff and take her to the home of the deceased in order that plaintiff might get a truck belonging to the deceased and bring it back to the Wyoming ranch to help in hauling to the company some eleven acres of beets which were yet to be delivered under the contract. Incidentally, this truck had been similarly used in former years. The plaintiff thereupon telephoned her mother-in-law (the defendant executrix) as directed. The executrix testified that following this call there was some discussion between the deceased and his wife as to whether the deceased would make the trip at that time or wait until evening. It was decided not to wait until evening, and the deceased instructed his wife to telephone back to the plaintiff and say that he would come after her that morning. The executrix

did as she was directed, and thereupon deceased left his home alone, driving his own automobile, the car in which plaintiff was riding at the time of the accident. On leaving his home, the deceased told the executrix that he would get the plaintiff and then return. The evidence as to what happened between approximately eight o'clock that morning, the time the deceased left his home, and the occurrence of the accident, which happened between eight-thirty and nine o'clock that morning ,is somewhat meager. The deceased's automobile was seen almost immediately prior to the accident, travelling east—which direction would be going away from the plaintiff's home and toward the deceased's home. A witness who, immediately before the accident, saw and recognized the car as being one owned by the deceased, at first testified it was being driven by a man and said there were two persons in the car. This witness later said her reason for stating the car was being driven by a man was because the person driving was wearing a man's hat. At the scene of the accident the deceased was found dead, lying under his car, and plaintiff was found badly injured, lying a few feet away. We do not detail the evidence with respect to the manner in which the fatal accident occurred, as that is not necessary for a consideration of the matters relied upon by the executrix in this appeal. We should, however, say that there was evidence that the plaintiff's injuries were not only serious but would result in some permanent impairment.

During oral argument before this court, appellant's counsel conceded that the executrix had waived her objection, that plaintiff's husband was improperly permitted to testify over objection, when the executrix subjected the witness to cross examination as to matters not gone into upon his direct examination. In consequence, appellant's first contention will not be

further considered. In re Arnt's Estate, 237 Minn. 245, 54 N.W. 2d. 333; Pierce v. Fontenelle, 156 Neb. 235, 55 N.W. 2d. 658; Morris v. Fulcher, 340 Mich. 691, 66 N.W. 2d 262; Geisel v. Burg, 283 Mich. 73, 276 N.W. 904; Goodale v. Murray, 227 Ia. 843, 289 N.W. 450.

Appellant objected to the executrix giving testimony on the ground (a) she was an incompetent witness under the provisions of Sections 3-2602, 3-2605, Wyoming Compiled Statutes, 1945, and (b) as the wife of the deceased her testimony was privileged. The pertinent portions of the two sections mentioned above and relied upon, are as follows:

§ 3-2602. "The following persons shall not testify in certain respects: * * *

3. Husband or wife, except as provided in Section 3681 [§ 3-2605]. * * * "

§ 3-2605. "In no case shall the husband or wife be a witness against the other, except in criminal proceedings for a crime committed by one against the other, or in a civil action or proceeding by one or against the other, or an action brought by the husband for criminal conversation with or seduction of his wife, or in an action brought by either husband or wife for the alienation of the other's affections; but they may in all civil and criminal cases be witnesses for each other the same as though the marital relation did not exist."

Paragraph 3, § 3-2602, Wyoming Compiled Statutes, 1945, prior to the passage of Ch. 145, Session Laws of Wyo., 1909, read:

"Husband or wife, except as provided in section three thousand six hundred eighty-one, concerning any communication made by one to the other during coverture, unless the communication was made in the known presence or hearing of a third person competent to be a witness; and the rule shall be the same if the marital relation has ceased to exist."

Counsel correctly says that when the legislature deleted all but that portion of the statute now remaining, a spouse was rendered incompetent to testify against the other, except in certain instances not applicable here, irrespective of such testimony being related to confidential communications. However, counsel incorrectly reasons that because of this enlarged protection, the duration of the bar against matters not confidential continues after termination of the relationship just the same as in case of confidential communications. This argument fails to take into account the reasons for keeping confidences between husband and wife inviolable even after the termination or dissolution of marriage. It is said, the privilege respecting confidential communications must endure, because otherwise the necessary confidences between husband and wife could not safely be reposed if a breach of that confidence may be completed after dissolution or termination of the marriage. 58 Am. Jur. 222 § 379. That reason is not present where the testimony is concerned with matter which was neither given nor received in confidence, as is true in this case, and such matter cannot be regarded as confidential. The service of the executrix in transmitting and receiving messages between plaintiff and deceased over the telephone, was nothing more nor less than acts of agency. The responses which the deceased made to messages from the plaintiff were directed by him to be communicated to the plaintiff, a third party. Even the fact that immediately following this exchange of messages, the deceased left his home alone in his automobile, was a circumstance incident to the arrangement the deceased had just authorized, and was not a matter related in any way to a confidential communication nor did it come to the wife's knowledge solely by virtue of the marital relation. It was rather identified with the business of the de-

ceased at hand and which he was transacting with the assistance of his wife.

In 58 Am. Jur. 222, § 380, it is said:

"Wherever a communication, because of its nature or the circumstances under which it was made, is obviously not intended to be confidential, it is not privileged. Although there is some dissent, the better rule would seem to be that ordinary conversations between husband and wife on matters of business, not confidential in their nature or induced by the marital relation, are not privileged. Certainly, this is true as to transactions between the two of them.  *  *  * Again, when a wife acts as agent for her husband, or the husband acts as agent for his wife, either may testify to the acts or communications within the scope of the agency in any case in which such acts or communications are involved, and this whether either spouse is a party or not, and whether the evidence makes against either or not, as the case may be. *  *  *  "

There is further reason why the matters testified to by the executrix may not be considered as confidential communications. In the same text, 58 Am. Jur. 223, § 381, it is also said:

"According, however, to the great weight of authority, a conversation, communication, or transaction between husband and wife, or a statement made by one to the other, in the presence of or overheard by a third person is not within the protection of the privileged communications rule.  *  *  *  By making the communication in the presence of others the husband and wife indicate in the most unambiguous manner that they do not intend that it be so. It is therefore the general rule that one spouse may testify as to a communication to the other in the presence of a third person.  *  *  *".

Although the matters testified about did not transpire in the actual presence of, nor were they literally overheard by the plaintiff, it seems reasonable to say that the wife's communicating the husband's messages

to the plaintiff over the telephone and at his direction, was as unambiguous an indication that neither the husband nor wife regarded the communication as being confidential, and that they did not intend that it be so, as would have been a communication made in the presence of a third party.

Perhaps the matter is stated as well as is possible in 58 Am. Jur. 141, § 205, which is as follows:

"In a few cases it has been held that the rule forbidding one spouse to testify for or against the other is equally applicable to prevent testimony for or against the estate of a deceased spouse. *The great weight of authority, however, is to the contrary.* The death of one party to a marriage is regarded as making the other a competent witness as to all matters not privileged as being confidential communications, in the absence of a statute to the contrary, even in a suit involving the estate of the deceased spouse; and this is the case although the testimony relates to transactions with the deceased, provided they are not of such a character as to be within the rule of privileged communications." (emphasis supplied)

The marital relationship terminated with death. The statute does not, in words, bar the testimony of a widow or widower, nor is there anything in the statute or in its history to indicate that such an extended interpretation should be given the words used. The statute is plain, it is certain, and it is unambiguous. Its meaning needs no translation. Supporting its text with authorities from most of the states as well as courts of the United States, in 70 C.J. 226, § 290, it is said with respect to statutes disqualifying persons as witnesses:

"Since the statutory disqualification is not to be extended by construction, a witness will not be excluded from testifying for example, as to transactions or communications with a deceased person or matters occurring in such person's lifetime, unless the witness belongs to a class which the statute has declared incompetent. * * * "

Of the same purport are §§ 105, 106, 58 Am. Jur. 86, the latter ending with the positive statement:

§ 106. "* * * Statutory provisions excluding persons from testifying are strictly construed. The modern tendency of courts is to look with disfavor on any attempt to extend by implication statutory prohibitions against the qualifications of witnesses."

Confidential communications between spouses should be protected after the death of either one of the spouses, as well as after termination of the marriage from other cause, but, unless precluded by the express terms of statute or for some other reason, adverse testimony may be given by a former spouse against the other or against the estate of the other, except as to confidential communications received during coverture. It follows there was no error in permitting the testimony of the executrix which was received in evidence.

To support the contention that there was a complete absence of evidence to prove plaintiff was a passenger for compensation, counsel first says that inasmuch as the purpose of guest statutes is to prevent fraud upon a casualty company through collusive action between host and guest, especially so where there is family relationship, our guest statute "should be applied * * * to eliminate the danger of such collusive suits where a family relationship exists." Counsel does not say just how this may be done, but his implication is reasonably clear. If that argument has any bearing at all upon the claimed absence of evidence to prove plaintiff was a passenger for compensation, it is because appellant is intimating—although cautiously—that the testimony of the executirx should not be considered at all, or at least it should be discounted because of the probability that it was collusively inspired and fraudulently designed. This injects matter wholly foreign to this appeal, as the record is devoid of any mention of insurance. Furthermore, what this court has previously

said regarding the effect of a defendant in tort action being insured, should incline us to disagree with counsel's contention that an inter-family suit "substantially guarantees that a liability insuror is in the background"; and with his covert suggestion that our guest statute should bar suits where a family relationship exists.

In McKinney v. McKinney, 59 Wyo. 204, 135 P.2nd. 940, suit in tort by wife against husband, the effect of defendant's being covered by liability insurance was given some consideration. One member of the court merely held that wife could not sue her husband for tort. Another justice was of the opinion that in the absence of liability insurance the action would not lie. The third member of the court dissented on the ground that the action was maintainable irrespective of liability insurance.

In Ball v. Ball, 73 Wyo. 29, 269 P.2nd. 302, a tort action where minor son sued father, it was pleaded that defendant had liability insurance. Defendant's demurrer was sustained, judgment entered, and plaintiff appealed. Many of the authorities relied upon and quoted at length in the opinion, emphasized that the presence of liability insurance had no bearing or effect upon the merit of the tort controversy. While no direct expression was made as to the effect of there being insurance, the holding that a minor child did not have a cause of action against its parent, even though it was pleaded that the father had insurance, amounted to a disaffirmance that a defendant's liability insurance affected the rights of parties in tort action. In both these cases the relationship of the parties was much closer than is true in this case. In consequence, they presented stronger reasons to support appellant's theory than is present here, where the relationship is more distant and through marriage only, yet those

opinions indicate the view of this court that the liability of the defendant was not affected by his being insured. To say our guest statute was enacted to protect insurance companies against possible fraud and collusion between host and guest, and more especially when host and guest are members of a family so as to let such speculation enter into the evaluation of the testimony of the executrix in this case, would not only require going clear outside the evidence, but would be to indulge in extreme conjecture and to impute to the legislature a questionable motive. We must therefore reject appellant's theroy that there is involved in this case any question of giving protection to an insurer, or that the rights of the parties, or the credibility of their witnesses are affected by any such consideration.

Appellant advises us that courts of seventeen states having statutes similar to our own, define a guest as a person transported "without payment"; that other states give similar definitions, except that in four such states the words "without compensation" are used, and in three more states the words "passenger for hire" are used instead of the words "without payment," and that in 4 Blashfield Cyclopedia of Automobile Law and Practice, Pt.1, 307, 308, 310, it is said that if the carriage "confers a benefit only on the person to whom the ride is given, and no benefits, other than such as are incidental to hospitality, companionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes; but, if his carriage tends to the promotion of mutual interests of both himself and the driver and operates for their common benefit or if it is primarily for the attainment of some objective or purpose of the operator, he is not a guest within the meaning of such enactments." After a somewhat exhaustive discussion as to what the payment or compensation must consist in order to constitute a passenger to be other than a guest within the meaning of guest

statutes and giving numerous citations and quotations from courts of various jurisdictions, some of which draw rather fine distincitions because of small differences in the wording of statutes, the appellant summarizes his views by saying, that the plaintiff must have removed herself from the operations of our guest statute by showing upon the greater weight of evidence that the deceased had an actual, potential, tangible, substantial, or material benefit arising out of the transportation of the plaintiff. In argument before this court, counsel abandoned reference to the weight of plaintiff's evidence, as he might well have done, and confines his attack to the proposition that there was a complete absence of evidence to establish that plaintiff was a passenger for compensation.

Because we have already determined that the testimony of the plaintiff's husband, as well as that given by the executrix, was properly received, it should be apparent that in responding to his lessee's request, transmitted to the deceased through his daughter-in-law and his wife, the deceased was acting primarily for the attainment of his own objective and purpose, and in order to protect his one-fourth interest in the eleven acres of beets yet to be delivered within the short time remaining, if the contract made with the sugar company was to be preserved. He was transporting his son's wife, not as his guest through his hospitality, for companionship, or for her convenience, but so that his truck might be made available to help in making delivery of his share of the eleven acres of beets which, under the contract upon which his name appeared, needed to be expeditiously delivered if their acceptance by the sugar company was to be assured.

We must, therefore, conclude that the evidence submitted to the jury was substantial and sufficient to sup-

port their conclusion that the plaintiff was being carried as a passenger for compensation.

Appellant's additional contention that there was also an absence of evidence to show deceased was the operator of the automobile at the time of the accident, ignores these cogent items: The car belonged to the deceased as is shown by testimony as well as by its registration certificate placed in evidence; the deceased within an hour previous to the accident, left his home alone, driving the car as was his custom and with the announced purpose of going after the plaintiff and then returning to his home; the car traveling in a direction away from the home of the plaintiff, was seen immediately before the accident with two persons in it and was recognized as being the car of the deceased; the person driving at that time was said to be a man because wearing a man's hat; and following the accident the body of deceased was found beneath the car with plaintiff lying nearby. Independent of the evidence that the car was registered in the name of the deceased, these other facts and circumstances were sufficient to entitle the jury to conclude that the deceased was driving the car at the time of the accident, at least in the absence of anything being shown to the contrary. However, § 60-131, W.C.S., 1945, expressly provides:

" In any controversy respecting the identity or ownership or control of a motor vehicle, the registration number borne by it shall be prima facie evidence that it was owned and operated by the person to whom the certificate of registration therefor was issued. * * * "

It is insisted that this statute does not apply and that an instruction given by the court that the jury might take it into consideration in arriving at their verdict, was erroneously given, because the case did not involve any controversy as to the identity or own-

ership or control of the vehicle. We find no merit in such a position. The very issue raised by appellant is whether or not the plaintiff had any evidence to prove the deceased was the driver at the time of the accident. This certainly presented a controversy as to the control of the vehicle, and this involved the identity of the person exercising that control.

What we have previously said when discussing the sufficiency of evidence to show the deceased was driving the car at the time of the accident, disposes of appellant's exception to the giving of the instruction which advised of the provisions of our statute making registration of the car prima facie evidence as to the person controlling the same.

Appellant has objected to the giving of that part of instruction numbered twenty, which told the jury that in arriving at damages they could consider the plaintiff's "loss of power and capacity of work and mobility, if any, and its effect upon her future." This objection is also integrated with appellant's contention that there was error in the court's refusing the defendant's instruction numbered thirty, which would have told the jury that they could not award plaintiff damages for any loss resulting from her inability "to perform the ordinary duties of the home or for any duties which she may have customarily performed upon the farm or in the interest of her husband's farming business, as these are damages suffered by her husband and not by her and to which only he would be entitled." There was evidence that in addition to discharging the tasks normally and usually attending upon and incident to the marital relation in and about the household and home, the plaintiff had not only worked in the fields, ploughing, disking, harrowing, gardening and otherwise assisting her husband in his farming operations for which she received no pay, but that in order to

provide herself with extra things she would go out and cut and sack potatoes, although there was no testimony either as to the amounts she was paid for such latter services or as to the reasonable value thereof.

It is appellant's position that by this evidence it was not shown that plaintiff suffered any damages through loss of wages or income due to her inability to work following the accident or because of her inability that all such work was for the benefit of her husband and for its loss only he could recover.

This contention poses a question about which there is considerable conflict, principally because of the later day trend away from the common law fiction of unity and identity of husband and wife, with the husband having absolute right to the wife's services and, consequently, the sole right to recover for being tortiously deprived of the same.

Many courts have held that married women's acts have abrogated the unity doctrine and have changed the law which gave the husband the sole right to recover damages for injury to his wife which deprived him of her services, and in construing and applying these acts they have repudiated the idea and all argument advanced to preserve it, that a husband has or should have a superior or different right to that of his wife.

Wyoming has led the way in what may be called the emancipation of womenkind, in political, economic, social and even in domestic fields. Women's right to vote, to serve upon juries, to hold public office, to engage in every kind of business, scientific, professional or other endeavor is recognized in this state. Her property rights have been made secure and independent of her husband and her right to acquire, hold and deal with the same are protected and provided for,

while at the same time she is made responsible for her contracts and torts and may sue, be sued, recovery had against her, and her sole and separate property subjected to the payment of judgments against her without recourse against the property of her husband. It would be strange law if we adhered to a rule which served to deprive a wife of her property in order to make redress for her tort which destroyed or reduced the capacity of another to work or perform services, irrespective of whether that service was in caring for a home or household, laboring for compensation or for other reason, and yet withheld from that wife the right to recover money damages if the situation were reversed. In her marital domestic life a wife, equally with her husband, is made responsible for their care. Although the husband may still choose the domicile, his retention of that right is made dependent upon his providing the home.

If, then, we are called upon to admeasure the effect of conflicting decisions from other jurisdictions upon this question, it seems but natural that we align ourselves with those courts which discard common law inhibitions and, wherever our statutes admit of such construction, give unto women equal rights with men, including full rights to recover for whatever legal wrong they may suffer, even though their spouses may also suffer injury through the wrong done unto them.

In Rodgers v. Boynton, 315 Mass .279, 52 N.E. 2d 576, 151 A.L.R. 475, the Massachusetts' court has flatly held that a wife, whether gainfully employed or not at the time of her injury, is entitled to damages against the tort-feasor for any impairment of her capacity to work and earn, and that the assessment of damages to a married woman on account of impairment of her earning capacity as a result of injury, includes consideration of her inability, due to the injury, to per-

form household duties. In Annotation, 151 A.L.R. 486, following that decision, we find it stated that "On the theory that the services of the wife arising out of the marital relation belong solely to the husband, for loss of which only he can recover, it has been generally held that a wife, living with her husband, cannot recover damages, resulting from injury to her person, for loss of time or earnings, or loss of services in connection with her household duties or duties as a wife, or where she is not engaged in any separate or independent business or employment * * * . " In support of that conclusion several cases are cited. However, in Annotation, 151 A.L.R. pp. 494, 495, 496, it is said: "On the other hand, there is authority to the effect that the wife is entitled to recover for loss or impairment of her capacity to perform her household duties, or for impairment of her earning capacity or capacity to labor, notwithstanding that she may be engaged only in the performance of household duties, and irrespective of whether she was working at the time of the injury, or whether she had ever worked." This latter statement is also supported by a number of cases, several of which are from the same states where the contrary had formerly been held. See Annotation, 151 A.L.R. 494, 495, Notes 36, 37, 38. No good purpose is served by calling attention to the specific holdings. It is sufficient to comment that among the expressions and reasoning contained in these decisions it is said in Powell v. Augusta & S. R. Co., 77 Ga. 192, 3 S.E. 757, 760, approvingly quoted in Colorado Springs & Interurban Ry. Co. v. Nichols, 41 Colo. 272, 92 P. 691, 693, 20 L.R.A. (N.S.) 215, that a wife's loss of capacity to work was to be "classed with pain and suffering." In Hamilton v. Great Falls St. Ry. Co., 17 Mont. 351, 43 P. 713, the court said "Plaintiff's capacity to earn is her own, and she is entitled to recover for any diminution of her capacity to work that is

shown to have resulted from the injury. * * *
The capacity is her own, and for its impairment she
can recover." Thomas v. Carter, 218 Ala. 55, 117 So.
634, 639, giving approval to the Montana case, says
"That this is good law as applied to the modern con-
cept of the marriage relation * * *. whatever may
have been the law of old, in this day and time the
wife is in no sense the servant of the husband. She is
no longer required to obey; she contributes her volun-
tary efforts to the maintenance of the conjugal estab-
lishment. What she does in the way of keeping the
household is done for herself as well as for the hus-
band. She is entitled to the comforts of well-kept home
equally with him, and no sufficient reason appears why
she should not have compensation for her share of
the loss when caused by the wrong of another. * *
* " In Perrigo v. City of St. Louis, 185 Mo. 274, 84
S.W. 30, 34, the court said "Physical disability is a
personal loss, apart from being a deprivation of a
money-earning power." Wolfe v. Kansas City, 334 Mo.
796, 68 S.W. 2d 821, 823, says "the present power or
ability to earn a living or earn money, which is in-
herent in every individual, although that power has
never been exercised and there is no present intention
to exercise it, because not necessary" gives a wife the
right of recovery for its loss or impairment, and there
are many other cases along the same line.

Insofar as the giving of the criticized instruction
numbered twenty is concerned, nothing is said with
respect to loss or impairment of the plaintiff's ability
to earn money or regarding the effect of her injuries
upon her ability to perform her household duties. All
that the jury was told is, that in arriving at the amount
of damages plaintiff suffered they might consider her
loss of power and capacity to work and mobility, and
the effect of such loss upon her future. It is at least

doubtful that such an instruction would be held improper even in those jurisdictions which deny a wife recovery for loss of ability to perform household and other duties growing out of the marital relationship. We find no error in the giving of instruction numbered twenty.

Whether or not the refusal to instruct the jury that they might not award any damages to plaintiff for loss of ability to perform ordinary duties of the home or which the plaintiff customarily performed upon the farm or in the interests of her husband's farming business was improper, depends upon the effect which our statutes relating to rights of married women have with respect to rights which she did not possess at common law.

The text in 41 C. J.S. 893, § 401 (2) (c), citing several of the authorities hereinbefore referred to, says: "Where the statute enables a married woman to use her time for the purpose of earning money on her separate account, the impairment of her capacity to labor may be considered as an element of damages in an action by her for personal injuries, even though there is no proof that she ever had earned any money, or ever had done any work, and whether or not it appears that she had used her earnings in support of the family. * * * It has been held that a married woman may recover for impairment of her ability to perform her usual household work, her privation in such case being classed with pain and suffering." However, in 27 Am. Jur. 95, § 497, it is said "a married woman cannot either at common law or under the Married Women's Acts recover for loss of time and impairment of earning capacity in respect of ordinary domestic services * * * . " It may be well to note that cases cited to justify this last statement either make no mention of Married Women's Acts or else

hold that under such acts of their state a husband was entitled to his wife's earnings, although one case cited, Normile v. Wheeling Traction Co., 57 W. Va. 132, 49 S.E. 1030, 1031, 68 L.R.A. 901, says: " * * * but by the said act of 1891 (a Married Women's Act) the common-law rule was abrogated, so that now the earnings of the wife, and any and all property purchased by her with the proceeds of said earnings, are her sole and separate property, so that her business affairs and transactions, and whatever might result from them, does not belong to her husband, and if she is interfered with in her business transactions, and for that reason unable to earn what she otherwise would have earned, the damage is personal to her, and such damages can be recovered by her in an action alone, or jointly with her husband." (parenthesis supplied.) In 27 Am. Jur., 95, 96, § 497, it is also stated — "In order to show the extent of the injuries received by a married woman, but not for the purpose of recovering for loss of time or capacity to render such services, evidence is held admissible to show that before the injury she performed the ordinary household duties of the family, and that after the injury she was unable to do so." Thus, the disagreement on this subject is made apparent. On one side it is said that under statute (Married Women's Act) a wife may recover for impairment of her ability to perform her usual household work and on the other it is asserted that even under such acts the wife may not recover.

Sections 50-201 to 50-209, inclusive, together with § § 3-604, 3-605, 3-3510, 3-7201, 6-704, 66-102, 66-113, Wyoming Compiled Statutes, 1945, make unmistakable the legislative purpose that a wife shall enjoy on an equal plane the same rights as her husband, and to this extent we must disagree with holdings that it is the husband who has the sole right to recover for the

wife's loss or impairment of ability to perform ordinary duties of the home or other duties customarily performed by her. In consequence, there was no error in refusing defendant's instruction numbered thirty.

Of course, what has been here said with respect to the right of a wife to recover damages for loss or impairment of power and capacity of work and mobility is not intended to nor does it in any way affect the right of any person to damages for their loss of earning capacity. The two are separate and distinct. Loss or impairment of power and capacity of work and mobility, which is the right to be a normal human being, may result in loss of earning capacity, but that is not always nor necessarily the case.

Appellant's final complaint is, that the jury's special verdict entitled the executrix to judgment notwithstand the general verdict, on the theory that it found the compensation the deceased was to receive for the trip consisted of "one-fourth share of the beets", which he was to get in any event. This was answered by pointing out that it was to the interest of the deceased to see that the beets were delivered in time to assure their acceptance under the contract.

Having found no error in the proceedings below, we affirm the judgment.

*Affirmed.*

BLUME, C. J. and PARKER, J. concur.